No. 13560

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

IN RE THE MARRIAGE OF DONALD L. JOHNSRUD,

Petitioner and Respondent,

-vs-

JEANETTE I. JOHNSRUD,

Respondent and Appellant.

---

Appeal from:  District Court of the Twelfth Judicial District,
              Honorable B.W. Thomas, Judge presiding.

Counsel of Record:

    For Appellant:

        Marra, Wenz and Iwen, Great Falls, Montana
        Joseph Marra argued, Great Falls, Montana

    For Respondent:

        Morrison, Ettien and Barron, Havre, Montana
        Van H. Barron argued, Havre, Montana

---

                    Submitted:  March 16, 1977

                      Decided:  NOV 29 1977

Filed:  NOV 29 1977

Thomas J. Kearney
                              Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Jeanette I. Johnsrud, former wife of Donald L. Johnsrud, appeals from an order of the Hill County District Court, awarding her $250 a month maintenance in the decree of dissolution of the parties' marriage.

The parties were married January 24, 1958. They have three children: Donald Larry, born October 6, 1960; Steven Paul, born April 2, 1963; and Cynthia Lynn, born May 17, 1966. At the time the parties married, the wife was 16 years old. She did not graduate from high school but later obtained a high school equivalency certificate. She had not been employed outside the home during the marriage. Each month, the husband gave the wife funds to pay for groceries, utilities and clothing. At the time of separation, she had been receiving $556 a month plus occasional supplements. In addition, the husband paid the house payments, car expenses including insurance, and bills for his own clothes.

The parties accumulated approximately $248,800 in assets during their marriage, with liabilities at the time of trial of approximately $40,800.

In its decree of dissolution of marriage dated July 28, 1976, the District Court decreed custody of the older son to the husband and the two younger children to the wife. The court ordered the husband to pay $150 a month child support for each of the two children in the wife's custody until each child reached majority or graduated from high school, whichever occurred first. The court awarded the wife the following property totaling $80,400 in value:

| | |
|---|---|
| Family residence | $53,900 |
| Household furnishings, fixtures and appliances | 15,000 |
| 1976 Pacer automobile | 5,000 |
| Two snowmobiles | 1,500 |
| Cash | 5,000 |
| | $80,400 |

The court awarded all other property to the husband, including $129,000 in corporate and other business interests. The court also ordered the husband to assume all liabilities, which included the monthly house payments of $169.00. It appears, however, in the court's findings that the house payments were somehow considered as maintenance, to terminate upon the wife's remarriage. The court found the husband's average net salary was $22,350 for the years 1971 through 1974, and that this income for succeeding years "should equal or exceed his average annual income for the 1971-1974 period." The court awarded monthly maintenance to the wife in the amount of $250, to be reviewed in five years.

The wife appeals primarily from the award of maintenance, but also questions the source of funds to be used for child support, and contends the District Court improperly denied attorney fees.

The wife contends the husband cannot use as a source of child support payments a $30,000 trust set up for the children under the Uniform Gifts to Minors Act. However, there appears to be no dispute on this matter. The husband agrees this trust was set up for incidental future expenses such as higher education and claims he does not intend to use it for present child support payments. Furthermore, the District Court in its findings of fact recognized the child support would come from the husband's income and not from any trust fund set up for future educational needs of the children. It is clear this trust fund will not be used for present child support obligations.

As to maintenance, the wife contends the court erred in determining the amount of maintenance, and that it awarded rehabilitative maintenance where it should have awarded permanent maintenance.

The disposition of marital property and the right to maintenance are closely related under the Uniform Marriage and Divorce Act, which became effective in Montana on January 1, 1976. Section 48-321, R.C.M. 1947, states:

-3-

"Disposition of property.   (1) In a proceeding for dissolution of a marriage, legal separation, or disposition of property following a decree of dissolution of marriage or legal separation by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court, without regard to marital misconduct, shall, and in a proceeding for legal separation may, finally equitably apportion between the parties the property and assets belonging to either or both however and whenever acquired, and whether the title thereto is in the name of the husband or wife or both.   In making apportionment the court shall consider the duration of the marriage, and prior marriage of either party, antenuptial agreement of the parties, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate liabilities, and needs of each of the parties, custodial provisions, whether the apportionment is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of capital assets and income.   The court shall also consider the contribution or dissipation of value of the respective estates, and the contribution of a spouse as a homemaker or to the family unit.   In disposing of property acquired prior to the marriage; property acquired by gift, bequest, devise or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage; and property acquired by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including the nonmonetary contribution of a homemaker; the extent to which such contributions have facilitated the maintenance of this property and whether or not the property disposition serves as an alternative to maintenance arrangements.

"(2) In a proceeding, the court may protect and promote the best interests of the children by setting aside a portion of the jointly and separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent children of the parties." (Emphasis added.)

The maintenance provision, section 48-322, R.C.M. 1947, states:

"Maintenance.   (1) In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

"(a) lacks sufficient property to provide for his reasonable needs, and

-4-

"(b) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

"(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:

"(a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

"(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

"(c) the standard of living established during the marriage;

"(d) the duration of the marriage;

"(e) the age, and the physical and emotional condition of the spouse seeking maintenance; and

"(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." (Emphasis added.)

The comments of the code commissioners to these statutes indicate the property division statute and maintenance statute must be read together because they have a dual purpose. In 9 Uniform Law Annotated, Marriage and Divorce Act, §308, p. 494, the comment under the maintenance section states in part:

"* * * The dual intention of this section [maintenance] and Section 307 [property disposition] is to encourage the court to provide for the financial needs of the spouses by property disposition rather than by an award of maintenance. Only if the available property is insufficient for the purpose and if the spouse who seeks maintenance is unable to secure employment appropriate to his skills and interests or is occupied with child care may an award of maintenance be ordered." (Paraphrased material added.)

We conclude, therefore, it is the first duty of the District Court to equitably distribute the marital property. After the court makes a decision on property division, then any additional needs

of a spouse petitioning for maintenance should be readily apparent. If these future needs cannot be met by a property distribution, then a petitioning spouse is entitled to maintenance if he fulfills the requirements of section 48-322, R.C.M. 1947. The District Court should enter appropriate findings under section 48-322, either granting or denying the maintenance.

In the present case no consideration was given to an equitable property distribution. The District Court awarded the wife only one-third of the marital estate; and, it was, as the District Court noted, income consuming. On the other hand, the property awarded to the husband was income producing and most likely would increase in value. Section 48-321, R.C.M. 1947, requires certain factors to be considered in dividing the marital estate, and there is no indication from the findings that this statute was followed in this case.

As a housewife, the wife acquired a vested interest in the property accumulated by the parties during the marriage. Biegalke v. Biegalke, ____Mont.____, 564 P.2d 987, 34 St.Rep. 401, 404 (1977); Eschenburg v. Eschenburg, ____Mont.____, 557 P.2d 1014, 33 St.Rep. 1198, 1201 (1976); Downs v. Downs, ____Mont.____, 551 P.2d 1025, 33 St.Rep. 576, 578 (1976). From the evidence before us we cannot determine whether an equitable division of the marital property would sufficiently provide for the wife's future needs without the need for maintenance. Whatever the case, before ordering maintenance and arriving at an amount, the District Court should first have arrived at an equitable division of the property.

The District Court need not be hamstrung in devising methods to accomplish an equitable division of property. States which have adopted the Uniform Marriage and Divorce Act dissolution provisions have provided alternative methods of handling the division of property upon dissolution of marriage. In the case of In re Marriage of Harding, (Colo. 1975), 533 P.2d 947, the parties, during the marriage,

had accumulated assets of $668,640, mostly in radio station stock. The court gave the husband the option of selling the stock and dividing the proceeds with the wife, or retaining full ownership and paying off the wife's interest in installments over 20 years. Another Uniform Marriage and Divorce Act case, Williams v. Williams, (Ky. 1973) 500 S.W.2d 79, set out similar alternatives. Williams cited as authority the pre-Uniform Marriage and Divorce Act cases of Clark v. Clark, (Ky. 1972), 487 S.W.2d 272 and Colley v. Colley, (Ky. 1970), 460 S.W.2d 821. In Colley the court held that the property should be distributed in kind, but where that is impracticable, it can be paid in money value, either in a gross amount or in installments. The court stated:

> "The distribution or division of property acquired during marriage by the team effort of the marital partners, is, strictly speaking, not alimony. * * * Where property is acquired during marriage by the joint efforts of the parties, it should be divided between the spouses according to what is just and reasonable. * * * This division is a distribution of property in kind or where that is impracticable the value of the interest in property in money can be adjudged payable in a gross amount or in installments where that method is suitable. * * *" 460 S.W.2d 826.

In Clark, the wife contended that the property awarded to her on division of the couple's horse breeding and trading business should be granted in kind rather than in cash. The court disagreed, stating:

> " * * * We have here a business estate, the division or forced liquidation of which could materially depreciate its value and could destroy the basis of the husband's earning capacity. In those circumstances it is proper to allow the wife the value of her share in cash, payable in installments. * * *" 487 S.W.2d 275.

For similar but non-Uniform Marriage and Divorce Act cases, see also, Vaughn v. Vaughn, (S. Dak. 1977), 252 N.W.2d 910, reported in 3 Family Law Reporter 2446; and Wilcox v. Wilcox, (1977 Ind.App.), 365 N.E.2d 792, 3 FLR 2599.

Under the Uniform Marriage and Divorce Act, there is a need to distinguish between a property right in the marital estate, and the maintenance provisions. Upon dissolution of marriage the property interest vests in the spouse to whom it is awarded. On the other hand, an award of maintenance is related only to the "needs" of the spouse seeking maintenance, and ceases, for example, upon the happening of certain events, such as death. Section 48-322 does not distinguish between permanent and rehabilitative maintenance. The right to maintenance continues as long as the need exists but, under section 48-322(f), R.C.M. 1947, this must be balanced with the needs of the other party. Under any circumstances, one is not entitled to maintenance unless he fulfills the requirements of section 48-322. Absent any evidence and findings under section 48-322, there is simply no basis to award maintenance.

It appears here the parties were confused as to the nature of maintenance. The record seems to indicate the wife did not object to the property division because she anticipated income in the form of maintenance to supplement this property award. There is no indication in the record as to whether she regarded the maintenance as a property right she would be getting in exchange for giving up the business property, or whether she was confining her claim to maintenance strictly to a situation where she could continue to show her need for it.

The wife demanded maintenance in the minimum amount of $600.00 per month and the maximum of $1,000.00 per month to continue either until her re-marriage or death, or until she reached the age of 62. There is some indication, however, that perhaps she was looking at maintenance more in the nature of a property interest in that she sought to peg her maintenance to a certain percentage of the husband's gross salary. Whatever the situation, the nature of her claim is not at all clear. Neither party proceeded on the basis

that it was the duty of the District Court to first make an equitable division of the marital estate before determining whether the wife should also receive maintenance.

Since we cannot determine from the findings and record that the case was properly tried and considered under the provisions of the Uniform Marriage and Divorce Act, we remand for a redetermination of the disposition of the parties' marital estate. The District Court is instructed to make specific findings of fact on each element delineated in section 48-321, R.C.M. 1947, as well as any other factors which it considers in dividing the property. Without such findings we cannot determine how the District Court arrived at its ultimate property division.

We cannot effectively reach the secondary matter of maintenance until there is a more equitable determination of the parties' interests. As we stated earlier, an award of maintenance is allowed only where a spouse has insufficient assets to cover living expenses (section 48-322(1)(a)) and cannot have appropriate employment for the reasons stated in section 48-322(1)(b). The needs of the spouse as to maintenance can only be determined after there is an equitable division of the marital estate.

The last issue is that of attorney fees. The wife requests an award for fees incurred for the trial. The District Court denied them because she did not request them in her pleadings. Section 48-327, R.C.M. 1947, allows the District Court to award attorney fees to a party in a dissolution of marriage proceeding. While this section does not require attorney fees to be prayed for, nevertheless we deem it good practice to request such fees in the pleadings. The Montana Rules of Civil Procedure do apply to the Uniform Marriage and Divorce Act unless otherwise provided. Section 48-315, R.C.M. 1947. Since we remand this case for a determination of property interests, the wife has the right to move to amend her pleadings and

-9-

make an appropriate request for attorney fees.

The judgment is vacated and remanded for redetermination of the marital estate in a manner consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-