No. 82-227

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

IN RE THE MARRIAGE OF

ANDREW J. BECK,

       Petitioner and Respondent,

  -vs-

DORIS BECK,

       Respondent and Appellant.

---

Appeal from: District Court of the Third Judicial District,
In and for the County of Powell,
The Honorable Robert M. Holter, Judge presiding.

Counsel of Record:

    For Appellant:

        Garlington, Lohn & Robinson; Paul C. Meismer,
        Missoula, Montana

    For Respondent:

        Leaphart Law Firm; Helena, Montana

---

Submitted:   January 17, 1983

Decided:   April 14, 1983

Filed: APR 14 1983

Ethel M. Harrison

---
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

This is the second appeal from the property distribution portion of a marriage dissolution decreed by the Powell County District Court. The husband brought the first appeal. In Re Marriage of Beck (1981), ___ Mont. ___, 631 P.2d 282, 38 St.Rep. 1054. In that opinion, we vacated the property division and remanded the case to the trial court holding that the trial court's findings of the husband's net annual income and the value of the marital estate were not supported by the evidence. We also held that when a property distribution includes a taxable event which precipitates a concrete and immediate tax liability, the trial court must consider that tax liability before entering judgment. During the pendency of that first appeal, the husband died and the appeal was continued by his estate.

On remand the trial court held a new evidentiary hearing and incorporated all the evidence from the first hearing. The trial court entered new findings and completely restructured the property distribution, awarding approximately a third of the marital estate to the wife and the remaining two-thirds to the deceased husband's estate. The wife appeals this second distribution claiming first that the trial court again failed to accurately determine the parties' net worth and second that the trial court erred by including the husband's estate tax liability as a marital debt to be paid before distribution. The wife has also questioned the equity of a forced sale of the Larabie ranch to raise money to pay all of the parties debts. We remand

this case to the trial court so that the decree can be modified in accordance with this opinion.

The parties were married in 1966. After 14 years the marriage was dissolved on April 11, 1980. The husband died on May 28, 1981. A complete statement of facts can be found in the first opinion.

In the first property distribution the trial court awarded the wife the Larabie ranch (valued at $393,000). The trial court awarded the rest of the property to the husband and ordered the husband to pay all debts of the parties. In the second property distribution, the trial court ordered the Larabie ranch sold and directed that all indebtedness of the parties be paid from the proceeds; mortgages, accounts, expenses of this litigation and all taxes, including estate and inheritance taxes. The trial court ordered the remaining property to be distributed 66 2/3 percent to the husband's estate and 33 1/3 percent to the wife.

The wife first contends that the trial court failed to accurately determine the parties' net worth. The trial court must determine the net worth of the parties at the time of their divorce. Grenfell v. Grenfell (1979), 182 Mont. 229, 596 P.2d 205. With this principle in mind we examine the findings which the wife disputes.

The trial court found that as of the date of the dissolution the only cash was $7,911 in a Federal Reserve Bank fund in Missoula. The wife claims that the correct cash figure should be $24,000. She bases her claim on testimony of the family accountant given on November 20, 1981 that there was approximately that amount of cash in an estate account opened after the husband's death, and after the dissolution. That account included proceeds from a life

insurance policy on the husband. The policy had been borrowed against during his life and the accountant testified that its cash surrender value as of the date of the dissolution was $651. The insurance proceeds were not a cash asset of the marital estate and would not properly be included in the property distribution. The trial court's finding of the amount of cash available as of the date of dissolution appears to be accurately based on the amount of cash held by the parties at the date of dissolution. The wife has not shown any clear error in that finding and we will not disturb it on appeal.

The wife next claims that the trial court improperly determined the value of installment contracts receivable by discounting them. She has urged the trial court to list these assets at their face amount rather than at the discounted amount proposed by the husband's estate. The trial court found that the contracts carried relatively low interest rates of six to eight percent and all have long periods of time to run. For those reasons, the trial court found that the contracts could not be readily marketed without discounting them. The accountant had testified at trial that such a discount would be a more accurate reflection of the value of the contracts. Again, the trial court's finding is based on substantial credible evidence and although the wife would prefer some other method of valuation, she has shown no clear error in the court's valuation and we will not disturb it on appeal.

The wife next claims that during the pendency of the first appeal the husband sold his one-eighth interest in the closely-held Mishmac Corporation for less than the fair market value. The husband sold that stock to his brother for

$7,000. The wife points out that less than one year after the husband sold his stock, Mishmac sold most of its property for $185,506. Had the husband not sold his stock, the wife claims his one-eighth interest would have been approximately $23,000. A post-dissolution sale by Mishmac of most of its assets is not relevant to this inquiry. We are concerned only with the value of the stock as of the date of dissolution. Although the value of assets owned by a closely-held corporation may be a factor in determining the stock's value, there are other considerations. The accountant testified that the Mishmac stock was subject to a restrictive agreement and could only be sold to existing stockholders.

The trial court's error lies in omitting any reference to the Mishmac stock in the second property distribution. The wife asked the trial court to amend its findings to include the stock. It was an asset of the parties at the date of dissolution. The initial decree refers to the fact that the husband owned stock in Mishmac for which he had been offered $7,000. There have been two complete hearings and both parties have had ample opportunity to present evidence of the stock's value as of the date of dissolution. We therefore direct the trial court to make a finding of the stock's value, limited to evidence on the record. We further direct the trial court to include the value of the stock in the parties' net worth.

Next, the wife contends that the trial court understated the value of the Red Hill property by failing to consider the value of the husband's mineral interest in the property. The mineral interests had been placed in a trust in the 1950's of which the husband was a beneficiary. Up to the time of the

divorce, little if any income had been received by the beneficiaries. However, at about the time of the divorce a phosphate mine was being developed on the land which later began to return significant royalties. The trial court did not mention the mineral interest in either the first or the second property distribution. The wife claims that the trial court should have assigned a value to the mineral interest in its findings. The husband's estate argues that he was only one of several beneficiaries and up to the time of the dissolution the income was negligible. Also the husband had only a life interest in the trust. His right to receive income ended at his death. Because this matter is disputed by the parties, we hold that the trial court should have made some specific finding regarding the value of the mineral interest as of the date of dissolution. We emphasize, however, that to the extent that increased mining royalties were merely a possibility as of the date of dissolution, they should not figure into the assigned value. We direct the trial court to make a specific finding of the value, limited to evidence on the record, and to include that value in the parties' net worth.

The wife contends that the trial court also erred by overstating the accounts payable and notes payable at $47,616.00. Both parties submitted a proposed finding which set the actual figure at $33,668.00. This was one of the few values upon which both litigants agreed. The trial court offered no explanation of how it reached the higher figure. The trial court should not have disregarded a fact to which both parties agree without giving its reasons. We therefore direct the trial court to modify that finding by changing the

amount of accounts payable and notes payable to the figure agreed upon by the parties.

We come now to the wife's second issue. She claims that the trial court erred by including the husband's estate debts and taxes as a marital debt which must be paid before any property is distributed. We agree. The effect of ordering those debts to be paid off the top of the proceeds from the sale of the Larabie ranch will reduce the wife's portion of the distribution. The husband died after the effective date of dissolution and the wife is not properly responsible for debts and taxes of his estate. Such a holding would be inconsistent with the well established rule that marital assets are to be valued at the date of dissolution and distributed as of that date. We direct the trial court to modify the decree accordingly.

We now turn to the wife's claim that the forced sale of the entire Larabie ranch to satisfy marital debts goes beyond the bounds of equity. We agree. Though the husband owned the ranch before the marriage, he deeded it into joint tenancy with the wife during the marriage. The trial court found that as of the date of dissolution the joint tenancy had not been terminated and elected to treat it as an asset of the marriage. The ranch has been the wife's home for the past seventeen years. The husband is now dead. The wife has expressed a strong desire to continue living on the ranch, and she places a great deal of importance in the ranch not only as a home, but for raising her quarter horses. She has asked to keep at least a part of the ranch. We see no reason to force the sale of the entire ranch to satisfy marital debts. The record shows that the ranch could easily be partitioned to give the wife the house and the main buildings

and approximately 70 acres. Though it has long been our policy to avoid splitting up ranches, we have also held that that policy cannot be used to avoid a party's right to an equitable distribution of marital property. In Re Marriage of Owen (1980), ___ Mont. ___, 609 P.2d 292, 37 St.Rep. 616. With these equitable considerations in mind, we direct the trial court to modify the decree so that the wife can keep that part of the ranch upon which she makes her home.

Finally, we note that in the first appeal, we held that when a tax liability will be triggered by a court ordered distribution, the trial court must consider the impact of that tax liability. In making the second distribution the trial court found that "[t]he requirement of raising cash to pay the obligations of the parties is greater than the tax problems generated thereby. Accordingly, and since there is no formula to escape taxes, the Court deems the foregoing [property distribution] to be the most advantages [sic]." Neither party has argued that the distribution will trigger tax consequences which were not considered by the trial court. We can only assume that the parties are satisfied that in this second distribution the trial court gave adequate consideration to the tax factor.

We remand this case to the trial court with instructions to modify the decree in accordance with this opinion.

_Daniel J. Shea_
Justice

We Concur:

- 8 -

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Chief Justice Frank I. Haswell specially concurs:

I concur in the result.

_____
Chief Justice