No. 84-46

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN RE THE MARRIAGE OF
LAWRENCE C. LOEGERING,

Petitioner and Appellant,

and

LOUISE M. LOEGERING,

Respondent and Respondent.

APPEAL FROM:  District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

R. W. Heineman, Wibaux, Montana

For Respondent:

W. Gene Theroux, Wolf Point, Montana

Submitted on Briefs:  July 10, 1984

Decided:  October 12, 1984

Filed: OCT 12 1984

*Ethel M. Harrison*
———————————————————————
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the final judgment entered in the District Court of the Fifteenth Judicial District, State of Montana, in and for the County of Roosevelt, dividing the marital assets of the parties. The husband appeals.

The parties were married on January 23, 1950, at Poplar, Montana. There were four children born of the marriage, with the youngest graduating from high school in May, 1981, and attaining the age of majority in June, 1981.

In September of 1981, Larry Loegering, petitioned for divorce in the District Court of the Seventh Judicial District, in Richland County, Montana. Louise Loegering filed a motion to dismiss and to change venue to the county of her residence, Roosevelt County, Montana. The venue was ordered to be transferred and the action was filed in the Fifteenth Judicial District, Roosevelt County at Wolf Point, on November 9, 1981. Louise filed a motion for temporary maintenance on November 27, 1981, requesting a hearing before the District Court on December 8, 1981, on said motion.

On December 8, 1981, the District Court heard the motion for temporary maintenance and counsel for the parties stipulated that said hearing would also be for the purpose of hearing evidence on the dissolution of the marriage between the parties. The Court ordered $1,200 per month temporary maintenance to be paid by Lawrence to Louise until the marital estate had been divided between the parties.

The District Court entered its findings of fact, conclusions of law and decree of dissolution in this matter

on January 15, 1982, reserving the division of the marital property for a later date convenient to the parties.

A hearing was held on the division of the property April 16, 1983, at which time both parties appeared and presented their evidence. On October 31, 1983, the District Court rendered its findings of fact, conclusions of law and division of marital property. Larry filed a motion for a new trial and a motion to alter and amend judgment upon which a hearing was held on December 13, 1983. The court issued its amendment to the findings of fact and conclusions of law, from which Larry has appealed.

Larry has worked many jobs, generally oil field related. His longest employment was from 1957 to 1975 with Murphy Oil Company. In 1975, Larry and Louise purchased a hardware store in Poplar, Montana. Larry worked in the store for two and one-half years. From 1975 until the store closed in May of 1982, Louise also worked in the store and kept the books for the business. At the time the parties purchased the store, they borrowed $45,000 from the Trader's State Bank at Poplar, Montana, where there is still a balance due and owing of $18,239.82, with interest from September 15, 1982. An operating loan was taken out by Larry and Louise at Trader's State Bank on April 22, 1981, in the amount of $19,706 of which there is an outstanding balance owed of $5,578.56, with interest from May 5, 1983. There is a balace due on the store purchase of $30,000 plus interest of $2,400. Other bills outstanding on the store are: property taxes for the year 1982 of $1,002.83; property taxes for the year 1983 of approximately $1,000; and insurance premiums of $1,220.

The total outstanding indebtedness of the Poplar store was in excess of $59,421.21. Larry testified the store may be worth $15,000 to $20,000. Larry testified that he told his son and Louise to close the store and left it up to them to sell the inventory and apply the money on obligations. Louise testified that she attempted to sell the store, but no one wanted it.

Larry and Louise discussed Louise moving to Sidney after their youngest daughter graduated from high school. However, Larry requested a separation from Louise in January of 1981, so Louise remained in Poplar. The testimony revealed, since 1977 when Larry reentered oil field work, he paid Louise $1,200 per month from which she maintained the home in Poplar for herself and minor children, made payments on the house mortgage, automobile and health insurance of the parties. Since January 1, 1982, she has received the sum of $1,200 per month under the order of the court for temporary maintenance.

Louise at the time of the hearing was fifty-six years of age. She has raised four childen with the youngest child graduating from high school in May of 1981. She has an eighth grade education. She has no other training or schooling. Although not a trained bookeeper, Louise maintained a set of records for the family business and waited on customers in the store from 1975 until June of 1982, when the store was closed. She is presently employed as a clerk in Boulds Drug of Poplar, Montana, earning $3.85 per hour for a thirty-seven and a half hour work week. Her take-home pay equals approximately $500 per month.

Larry is fifty-seven years of age and claims poor

-4-

health because of high blood pressure. In 1977, Larry moved to Sidney, Montana, to become more available for oil field work. In January of 1981, he commenced work as an independent oil consultant. He transferred his consulting service to a wholly-owned corporation, L. C. Loegering, Inc.

The income of Larry from operating as an oil field consultant for the years 1979, 1980, 1981 and 1982 are as follows: gross: $54,619.67 and net: $51,570.51 of which approximately $16,000 was paid to federal and state income tax; gross: $73,535.58; and net: $67,518.01, of which approximately $25,000 was paid to federal and state income tax; gross: $104,609; and net: $65,887 of which approximately $25,000 was paid to federal and state income tax; net: $94,292 of which approximately $33,000 was paid to federal and state income tax.

Larry is now employed by Louisiana Land and Exploration as a consultant with an annual salary of $50,000 and fringe benefits including life insurance, medical insurance and a pension plan. He also possesses a pension plan from Murphy Oil Corporation upon which no value is placed. Larry has an operating loss carry-over from the 1982 operation of the hardware store. The operating loss carry-over amounts to $45,535, which was applied to his 1982 personal income tax return. This amount at the average federal tax imposed upon him of 29.30% in 1982 realized a savings to him of $13,342, none of which he shared with Louise.

The trial court's findings reveal at the time of the marriage dissolution in January of 1982, the marital assets of the parties included:

                house in Poplar:                  $57,000.00
                corporation accounts
                            receivable:          $60,000.00
                oil well:                         $7,000.00
                corporation pension plan:        $13,665.00
                furniture in Sidney:              $4,000.00
                automobile:                       $4,800.00
                Suburban:                         $9,400.00
                El Camino:                        $6,500.00
                jewelry:                          $2,000.00
                trailer deck:                     $2,390.00
                new wife's vehicle:               $3,400.00
                office equipment:                 $2,000.00
                store building in Poplar:        $25,000.00
                personal bank account:            $2,779.92
                corporation bank account:         $9,000.00
                Murphy Corporation retirement: (husband
                            unable to place a value)
                stock in corporation:    (no value given)

The transcript reveals the liabilities as follows:

                car loan:                           $918.00
                house loan:                       $5,762.00
                business loan:                   $23,818.38
                store contract:                  $30,000.00

The trial court made no determination of the net value of the marital estate in its original findings, but upon motion to amend, modify and for a new trial, the court on December 13, 1983, found that marital net worth of the parties was $150,000 with $100,000 to Larry and $50,000 to Louise.

Prior to the dissolution of marriage, Larry expended the following sums for his fiancee without the knowledge or consent of Louise: $2,000 for jewelry; $2,390 for a deck on her trailer; and $3,400 for an automobile.

Larry's standard of living prior to the dissolution of marriage was quite high. He withdrew $2,500 per month from the Richland Bank and $2,500 per month from the Montana Bank. When Larry reentered the oil field consulting work in 1977, he established a second household at Sidney, Montana. Larry purchased a house for $143,000 in which he has $80,000 equity. He also retains a corporate pension plan in the amount of $13,665 and he invested in an oil well in the

-6-

amount of $7,000. In addition, Larry has a personal bank account of $2,779.92, and his corporation, L.C. Loegering, Inc., has a bank account of $9,000. He also owns an El Camino automobile valued at $6,500 and a Suburban automobile valued at $9,400.

Louise received the following assets from the dissolution of marriage: the house in Poplar valued at $55,000, an automobile worth $4,800 and $10,000 in cash. Louise was to pay the debt on the house of $5,762.84 and the debt on the Oldsmobile of $918.64. The net award to Louise is $65,618.52 plus monthly maintenance of $1,000 per month.

Larry received the following marital property: the store in Poplar subject to the following bills: unpaid purchase balance of $30,000, unpaid interest of $2,400, unpaid insurance $1,220, unpaid taxes $1,002 and notes to Poplar Bank $23,808.38. The total loss on the Poplar store property was $43,430. Larry was awarded the value of the assets purchased from his earnings after separation but prior to the dissolutionment. Jewelry for fiancee, $2,000, deck for fiancee's trailer $2,390, car payment for fiancee $3,400, and one-fourth of the retirement account $3,416.25. Larry also received the following property he acquired with his earnings after the separation: the home in Sidney worth $80,000, the El Camino valued at $6,500, accounts receivable of $12,000, cash on hand $2,779, corporation cash $9,000 and three-fourths of retirement account worth $10,248.75. The husband received more than one-half of the marital assets.

The District Court ordered Larry to pay Louise the sum of $1,000 per month for her support, care and maintenance until she reached the age of 65 years. The court also

ordered Larry to pay the sum of $2,500 toward Louise's attorney fees incurred in the dissolution of marriage and the division of the marital property.

The appellant makes the following challenges to the District Court's final disposition of marital assets:

(1) Whether the trial court committed error in failing to determine net worth at time of separation or dissolutionment.

(2) Whether the earnings of appellant after the separation of the parties should not be included in the marital estate.

(3) Whether the findings of the trial court support the award of maintenance.

(4) Whether the findings of the trial court support the award of attorney fees.

Appellant first contends that the trial court committed error in failing to consider a date for determination of the marital property. As a result, any net worth determination is in error.

We have steadfastly adhered to the rule pronounced by this Court, "A proper disposition of marital property in a dissolution proceeding requires a finding of the net worth of the parties at or near the time of dissolution." In re the Marriage of Beck v. Beck (Mont. 1983), 661 P.2d 1282, 40 St.Rep. 565; In re the Marriage of Hamilton v. Hamilton (Mont. 1980), 607 P.2d 102, 37 St.Rep. 247. The reasons for the rule are obvious. "The reasonableness of such an award can only be determined after there has been an equitable division of the marital estate . . . " In Re Marriage of Kramer (1978), 177 Mont. 61, 580 P.2d 439; it serves to

determine value of property when "the parties themselves cannot agree as to what the court found their net worth to be." Vivian v. Vivian (1978), 178 Mont. 341, 583 P.2d 1072; ". . . such a determination of net worth provides a basis for this Court to conduct meaningful review . . . " In re the Marriage of Hamilton v. Hamilton (Mont. 1980), 607 P.2d 102, 37 St.Rep. 247.

Here there was a lapse of fifteen months between the date of dissolution and the hearing on the property distribution. In December of 1981, the court awarded temporary maintenance for Louise, and granted a decree of dissolution on January 15, 1982. At that time, the counsel of both parties desired that a hearing for property and maintenance award be held at a later date. The court made written findings and ordered that a postponement of the property disposition be at a time mutually agreeable to both counsel. On April 16, 1983, a hearing was held on the property distribution. Although no determination of net value was made in the trial court's original findings, net worth was established on December 13, 1983.

We have recognized that the District Court may postpone disposition of the marital property, in a hearing separate from dissolutionment. "The interests of justice and judicial economy are best served by giving District Courts broad discretion in the conduct of their proceedings and the severance of the various elements of dissolution decrees . . . " Miller v. Miller (Mont. 1980), 616 P.2d 313, 318, 37 St.Rep. 1523, 1528. However, a postponement should not be a routine matter. In Re the Marriage of Krause (Mont. 1982), 654 P.2d 963, 39 St.Rep. 1809.

The facts of this case are unprecedented. There were no marital assets that fluctuated in value during the fifteen month period. No oil stock investments were made as was the case in Krause, supra. No major stock or life insurance policies were involved, as was the situation in In re the Marriage of Beck v. Beck (Mont. 1983), 661 P.2d 1282, 40 St.Rep. 565. The record reveals the assets that existed on the date of dissolution were unchanged in character and value, as on the day the property disposition hearing was held. Even though appellant acquired additional assets as a result of his earnings, he has retained those assets. Further, appellant unequivocally stipulated to a later date for the property distribution hearing, and it was appellant, the moving party in this entire matter, who petitioned the trial court for the property distribution hearing fifteen months later. These facts taken together do not substantiate reversible error. As we stated in Krause, "we do not hold that an unwarranted delay will result in a faulty District Court judgment."

We hold in this unique and rare circumstance, the trial court's failure to value the marital estate at the time of dissolution, at best, constitutes harmless error.

As the second issue, appellant alleges that his earnings after the separation should not have been included in the marital estate.

The case of In re the Marriage of Wagner v. Wagner (Mont. 1984), 679 P.2d 753, 41 St.Rep. 409, is cited in support of this contention. There, upon the parties' separation, the financial status of each party took divergent courses. The wife established herself in a new

ranching operation without assistance from the husband. With this basis and loans from her family, she purchased several parcels of real property and had plans to acquire additional property. However, the husband's financial status deteriorated from the date of separation to final disposition. The husband encumbered the ranch with numerous loans until his credit was frozen pending final distribution of marital property. The husband terminated all ranching operations.

We held that neither the husband's increased financial obligations, nor the wife's real estate and livestock purchases should be denominated marital assets. Larry claims the Wagner decision applies to this situation. He submits that from the time of the parties' separation, he was living in Sidney, Montana, without any marital benefits of his wife. During this time period he worked to establish his own consulting business, negotiating his own independent financial security. While Louise, he contends, was not doing a thing.

However, the record and the findings of the trial court indicate otherwise. The Wagner decision differs fundamentally from the present case in that here, Louise was not a highly skilled business person capable of negotiating her own financial independance. She was a mother of four children and a housewife. She had no high school or vocational education. Nor did she possess any marketable skills. Whereas in Wagner, both parties were partners in the ranching operation. Both were competent, experienced and resourceful ranchers. Another difference between the two cases is the fact that Louise did not unilaterally

encumber the financial stability of the Poplar hardware store. Rather, the store from its very inception was in debt and losing money. In 1977, the husband left the store to return to the oil field, leaving his wife and son to manage the store. Larry testified he told his son and his wife to close the store and left it up to them to sell the inventory and apply the money on obligations. Furthermore, the parties were not separated at the time Larry left the family business to return to the oil fields as was the case in Wagner. In Wagner, the parties established separate financial operations with the intent to establish separate and independent courses. Whereas here, Louise ran the store with her son with the intent to continue it as a family business.

Appellant cites this Court to precedent involving valuation of marital assets at the time of separation rather than the time of dissolution. In Tureman v. Tureman (Mont. 1980), 620 P.2d 1200, 37 St.Rep. 1922, the parties were separated and the final dissolution decree resulted eight years later. An agreement was negotiated between the parties at the time of separation which in substance cut off any rights the wife would be entitled to in the husband's property. That is not the situation in this case. In another case, In Re Marriage of Sell (Mont. 1981), 630 P.2d 222, 38 St.Rep. 956, the trial court's division of the marital residence on other than a 50-50 basis in favor of husband reflected a careful and conscientious consideration of appropriate factors, including facts that although wife acquired a vested interest in the property she did not contribute by work or labor in improving the property and

she did not reside with the husband during the period in which the improvements to the property were made.

Both cases lack direct application to the present matter. No property distribution agreement was ever negotiated between the parties at the time of separation, as was the case in Tureman, supra. The record indicates even after the separation, Louise continued working in the store which enabled Larry to continue his corporate operation. Therefore, in reviewing the property division ordered by the District Court, we hold any determination of the marital assets at the time of separation would clearly have been inequitable. This Court has long recognized the broad discretion the district courts have under Montana law in distributing marital property. This Court has a limited scope of appellate review and will not intervene except when the District Court has departed substantially from the norms of equity, In Re Marriage of Sell (Mont. 1981), 630 P.2d 222, 38 St.Rep. 956; In Re Marriage of Herron (Mont. 1980), 608 P.2d 97, 37 St.Rep. 387; In Re the Marriage of Jacobson v. Jacobson (1979), 183 Mont. 517, 600 P.2d 1183.

Appellant next argues that he cannot pay $1,000 a month for support. Appellant submits that the District Court committed error in failing to consider the amount available to Larry after the award of maintenance to Louise.

The standard for review of the District Court's decision is well settled: "The award made by the District Court will not be disturbed on appeal unless there has been a clear abuse of discretion resulting in substantial injustice." Grenfell v. Grenfell (1979), 182 Mont. 229, 596 P.2d 205, following In Re the Marriage of Brown (1978), 179

Mont. 417, 587 P.2d 361. See also In Re the Marriage of Levandowski v. Levandowski (Mont. 1981), 630 P.2d 239, 38 St.Rep. 1002. "The test for reviewing the District Court's discretion is: Did the District Court in the exercise of its discretion act arbitrarily without employment of conscientious judgment, or exceed the bounds of reason in view of all of the circumstances?" In Re the Marriage of Jacobson v. Jacobson (1979), 183 Mont. 517, 521, 600 P.2d 1183, 1186.

The District Court did not act arbitrarily in determining the amount of maintenance to Louise. The hearings were extensive and provided ample opportunity for counsel of both parties to place on the record evidence regarding support and maintenance. Under section 40-4-203(1), MCA, maintenance may be awarded if the spouse seeking maintenance lacks sufficient property to provide for his reasonable needs and is unable to support himself through appropriate employment. Section 40-4-203(2), MCA, requires the court to consider the following prior to awarding maintenance:

> ". . . the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, . . . the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; . . . the standard of living established during the marriage; . . . the duration of the marriage; . . . the age and the physical and emotional condition of the spouse seeking maintenance; and . . . the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."

The appellant contends the District Court committed

-14-

error by failing to consider his needs following the award of maintenance as dictated by the ruling of In Re the Marriage of Jorgensen (1979), 180 Mont. 294, 590 P.2d 606. In Jorgensen we went on to state:

> "This case is to be distinguished from those in which there were marriages of long standing, and the circumstances were such that the wife was not able to go out and successfully compete in the job market. See, for example, Cromwell v. Cromwell (1977), 174 Mont. 356, 570 P.2d 1129; and Johnsrud v. Johnsrud (1977), 175 Mont. 117, 572 P.2d 902, 906 where we said that an award of maintenance is related only to the needs of the spouse seeking maintenance."

The long-standing marriage and support situation this Court had in mind in Cromwell and Johnsrud is present here. The District Court specifically found in its findings of fact and conclusions of law that:

> ". . . petitioner is a skilled oil field consultant and is an able bodied man capable of earning large sums of money from his employment. . .
>
> ". . .
>
> ". . . that petitioner earned sums in the oil field during the period of time he was an independent oil field consultant ranging from $375 per day as testified to on December 8, 1981, ranging to the sum of $232,805 for the fiscal year November 1, 1981, and ending October 31, 1982. Said latter sum was earned under the name of L.C. Loegering, Inc., and from such sum the petitioner withdrew $132,752.
>
> ". . .
>
> ". . . that petitioner is now employed by Louisiana Land and Exploration as a consultant with an annual salary of $50,000 per year and fringe benefits including life insurance, medical insurance and a pension plan. . . "

The District Court correspondingly found that the wife is fifty-six years of age. She lacks sufficient property to

provide for her reasonable needs, is unable to support herself through appropriate employment. After thirty-two years of being a wife and mother she does not have sufficient education or training to find appropriate employment. The wife testified that her standard of living was higher prior to dissolution of marriage and appellant testified that he set her standard of living at $1,200 per month. The wife has become accustomed to the standard of living established during the marriage.

The award of $10,000 in cash to Louise lies at the heart of the husband's argument in this maintenance issue. He contends if the wife receives the $10,000, she certainly can pay-off the house and car indebtedness of $6,680, which would reduce her monthly needs. The District Court provided the amount of $10,000 as a reasonable sum to be paid by the husband in reimbursement for expenditures made by him prior to the dissolution of marriage without the knowledge or consent of the wife. Such sums expended from the marital estate include: $2,000 for jewelry for his fiancee; $2,390 for a deck for his fiancee's home; and $3,400 for his fiancee's vehicle. The award of $10,000 to the wife was proper and equitable.

Section 40-4-110, MCA, controls the district courts concerning the issue of attorney fees. The statute vests in the district court the discretion to award costs and attorney fees in a dissolution proceeding. In Re the Marriage of Brown (1978), 179 Mont. 417, 587 P.2d 361. Appellant's attack on the award of attorney fees is premised upon the financial inability of appellant to pay. The District Court found that Louise lacked sufficient property

-16-

to provide for her reasonable needs and that she was unable to support herself without a maintenance award. The District Court made a finding that the wife does not possess sufficient funds with which to pay her attorney fees. Since the reasonableness of attorney fees were never questioned by the husband and was accepted by the District Court as reasonable, we uphold the award of attorney fees to the wife.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices