No. 05-439

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 352N

IN RE THE MARRIAGE OF

BRIAN J. JOLLY,

        Petitioner and Appellant,

    v.

KIM M. JOLLY,

        Respondent.

APPEAL FROM:    The District Court of the Eighth Judicial District,
                    In and For the County of Cascade, Cause No. DDR 2004-023(c),
                    Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Marcia Birkenbuel, Attorney at Law, Great Falls, Montana

        For Respondent:

        Daniel L. Falcon, Falcon, Lester and Schaff, P.C., Great Falls, Montana

Submitted on Briefs:  November 1, 2006

Decided:  December 29, 2006

Filed:

_____
                           Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result in this Court's quarterly list of nonciteable cases published in the Pacific Reporter and Montana Reports.

¶2 Brian J. Jolly appeals from an Eighth Judicial District Court, Cascade County, dissolution decree and an order denying his motion to alter or amend the decree.

¶3 Brian raises two issues on appeal, which we restate as follows:

¶4 1. Did the District Court abuse its discretion when it allocated $70,151 worth of debt as joint marital debt?

¶5 2. Did the District Court abuse its discretion when it based the value of the parties' retirement accounts on values that included projected cost-of-living increases?

## BACKGROUND

¶6 On May 6, 2005, the District Court entered a decree of dissolution ending Brian J. and Kim. M. Jolly's marriage. They had been married since 1977 and had two children born of the marriage, one of whom was a minor at the time of dissolution. At the time of trial on April 6, 2005, Brian was forty-five years old and was an active member of the military. Kim was also forty-five years old and was a civilian employed by the federal government. During the marriage, Kim was primarily responsible for managing the family's finances.

2

¶7    Throughout the dissolution proceedings, Brian alleged that Kim dissipated the marital estate by incurring substantial credit card debt that was solely for her benefit, as well as cashing joint mutual funds without giving him his equal share.

¶8    At trial, Kim introduced Exhibit A-1, a report prepared by her expert witness, Dan Vuckovich.  The report listed credit card debt and set forth a proposed allocation of assets and liabilities.  The top half of the list set forth joint credit card accounts and Brian's credit card accounts totaling $63,413.  Kim proposed allocating half this debt to Brian and half to her, with the instruction that this debt was to be paid with proceeds from the sale of jointly owned land and a boat.  The bottom half was a list of credit accounts held in Kim's name only in the amount of $70,151.  Kim allocated this debt to herself.  Because Kim was taking on more liability, she proposed that more assets be allocated to her.

¶9    In response to Brian's allegation that most of the credit card debt was solely for her benefit, Kim introduced Exhibits W-1 through W-10.  These exhibits were apparently lists that stated the purpose of some of the expenses, such as family gifts, clothing for the family, family vacations, and school supplies.  We do not have the benefit of these exhibits, however, because the original trial exhibits were not included in the District Court file as part of the record sent to this Court.  Further, Kim testified that the mutual funds she withdrew were used to pay off some of the debt.

¶10    Both parties had experts testify at trial with regard to the valuation of Brian's military retirement account and Kim's federal employee retirement account.  Brian's

3

accounting expert, Nicholas Bourdeau, testified that the present-day value of Brian's retirement account was $432,171, and the present-day value of Kim's retirement account was $67,121. Bourdeau stated that he did not include periodic cost-of-living increases that will be added to the pensions over time as part of the valuation. His opinion was that including those amounts was speculative because an increase may or may not occur, and the amount of increase is unknown.

¶11 Kim's accounting expert, Dan Vuckovich, included cost-of-living increases in his valuation of the retirement accounts. He calculated that the present-day value of Brian's retirement account was $576,680, and the present-day value of Kim's was $88,477. He relied on the Military Officers Association of America's (MOAA) chart that tracked retired pay cost-of-living increases from 1952 to 2003 to make the valuation. In Vuckovich's opinion, if the court divided the marital assets without including the cost-of-living increases, the assets would be undervalued. Vuckovich used his valuations to propose the allocation of assets and liabilities in Exhibit A-1, resulting in an equal division of net assets between the parties.

¶12 The District Court issued findings of fact, conclusions of law and the final decree. The court recognized the conflicting expert testimony as to the valuation of the retirement accounts, but found Kim's calculation to be appropriate. The court found that Kim's proposed allocation of marital property in Exhibit A-1, which gave Kim more assets as well as more liability, was equitable. The court also recognized that evidence indicated a tendency of spendthrift buying on Kim's part, especially toward the end of the marriage,

4

and that Brian paid some of the debts she incurred. The court further noted it found evidence to justify at least some of Kim's spending. To address Kim's withdrawal of mutual funds, the court adjusted the amount of back child support owed to Kim. Based on these findings, the District Court adopted Kim's proposed assets and liabilities allocation.

¶13 Brian filed a motion to alter or amend the court's decree requesting the court to allocate $70,151 indebtedness solely to Kim. The court denied this request and Brian appeals.

## STANDARD OF REVIEW

¶14 We review a district court's division of marital property to determine whether the findings of fact upon which the division is based are clearly erroneous. *In re Marriage of Harris*, 2006 MT 63, ¶ 16, 331 Mont. 368, ¶ 16, 132 P.3d 502, ¶ 16. If the findings are not clearly erroneous, we will affirm a district court's division of property unless the district court abused its discretion. *Marriage of Harris*, ¶ 16. An abuse of discretion occurs if the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26.

## DISCUSSION

¶15 **ISSUE 1: Did the District Court abuse its discretion when it allocated $70,151 worth of debt as joint marital debt?**

5

¶16 A district court has broad discretion when dividing property in a marital dissolution. *In re Marriage of Binsfield*, 269 Mont. 336, 343, 888 P.2d 889, 893 (1995). Section 40-4-202, MCA, provides that a court shall equitably apportion property and assets of the parties, no matter how or when acquired, and the "court shall also consider the contribution or dissipation of value of the respective estates" in making the apportionment. A finding of dissipation must be supported by substantial evidence. *Marriage of Binsfield*, 269 Mont. at 345, 888 P.2d at 894. A district court's decision with regard to property distribution is presumed correct. *In re Marriage of Clyatt*, 267 Mont. 119, 122, 882 P.2d 503, 505 (1994). It is the appellant who bears the burden of establishing error by the court; such error cannot be established in the absence of legal authority. *State v. Bailey*, 2004 MT 87, ¶ 26, 320 Mont. 501, ¶ 26, 87 P.3d 1032, ¶ 26. Further, it is the appellant's duty to provide this Court "with a record sufficient to enable it to rule upon the issues raised." M. R. App. P. 9(a). Failure to do so may result in dismissal of the appeal. M. R. App. P. 9(a).

¶17 On appeal, Brian argues that the District Court failed to consider the $70,151 debt as evidence of Kim's dissipation of the marital estate. Brian further argues that he did not get credit for money he paid toward some of that debt, nor did he get an equal share of the mutual fund checks withdrawn by Kim. Brian states that there was no evidence of the nature or purpose of the debts listed on the bottom half of the list of debt in Kim's Exhibit A-1, without pointing to any specific part of the record. Brian alleges that Kim addressed only the joint debt specified on the top half of that list, but does not point to

6

any specific part of the record. We assume he refers to the portion of the transcript where Kim introduced Exhibits W-1 through W-10 which apparently explained the nature of her spending. However, since the exhibits are not part of the record on appeal, we cannot address Brian's argument.

¶18 Brian does not cite to the record or to any legal authority to support his assertions that the District Court erred in its findings, as required by M. R. App. P. 23(a)(4). Brian has not established that the court acted arbitrarily or exceeded the bounds of reason when it apportioned the marital assets and liabilities as it did. Further, he has not cited to substantial evidence of the nature or purpose of Kim's spending to support a finding of dissipation. Therefore, we conclude that Brian has not met his burden on appeal, and we affirm the District Court on this issue.

¶19 **ISSUE 2: Did the District Court abuse its discretion when it based the value of the parties' retirement accounts on values that included projected cost-of-living increases?**

¶20 Federal law grants state district courts authority to treat military retirement pay as marital property according to the laws of that state. 10 U.S.C. § 1408(c). Military retirement pay must be increased annually to reflect cost-of-living adjustments based on the Consumer Price Index. 10 U.S.C. § 1401a. Federal employee retirement accounts are similarly increased for cost-of-living adjustments. 5 U.S.C. § 8340. A district court's valuation of property can be premised on expert testimony, lay testimony, documentary evidence, or a combination thereof. *In re Marriage of Meeks*, 276 Mont. 237, 242, 915

7

P.2d 831, 835 (1996) (citation omitted). The court may adopt any reasonable valuation if it is supported by the record; we will not disturb such a finding on appeal. *Marriage of Meeks*, 276 Mont. at 242-43, 915 P.2d at 835.

¶21　In this case, Brian argues that the court's adoption of Kim's expert's valuation of the retirement accounts to include cost-of-living increases is speculative. Brian relies on his expert's testimony that there is no guarantee that cost-of-living adjustments will occur or will continue at the rate experienced in the past. Kim's expert testified based on the MOAA chart showing the cost-of-living increases since 1952 and the average rate of those increases, and in accordance with 10 U.S.C. § 1401a and 5 U.S.C. § 8340. The District Court adopted this valuation.

¶22　Brian cites no authority in support of his argument that statutorily mandated cost-of-living increases to retirement accounts are speculative. *See* M. R. App. P. 23(a)(4). Absent any authority, and again recognizing that the appellant bears the burden of establishing error by the trial court, we decline to address this argument further and find no need to disturb the District Court's finding. *See Bailey*, ¶ 26.

¶23　We affirm the District Court.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

Justice Patricia O. Cotter concurs and dissents.

¶24 I concur with this Court's resolution of Issue 2, but I dissent from our resolution of Issue 1.

¶25 In Finding of Fact XV, the District Court found that the evidence tended to show "spendthrift buying behavior on the part of [Kim] . . . ." This "spendthrift buying" included credit card debt amounting to over $70,000.00. While the court appropriately allocated this amount to Kim, it improperly awarded her the same amount in assets in order to equalize the distribution. The court further erred, in my judgment, in concluding that Brian was compensated for this excess debt occasioned by Kim's spending in light of the allocation to him of $10,000.00 in mutual funds. Not only is $10,000.00 a wholly inadequate "equalizer," Brian was not even allowed to retain the entire sum, as he was ordered to apply it in part to delinquent debt.

¶26 Although I agree with this Court that the district court has broad discretion in dividing property in a marital dissolution (¶ 16), this discretion is not unfettered. The court made a specific finding that Kim engaged in spendthrift buying behavior, and then inexplicably failed to take her dissipation of the estate into consideration in making the apportionment, as § 40-4-202, MCA, requires. In this respect, the court's division of the estate cannot be reconciled with its finding of spendthrift buying behavior on the part of Kim. I would therefore reverse and remand for a new trial as to Issue 1 with instructions that the District Court make informed findings regarding Kim's dissipation of the marital

9

estate and an appropriate distribution based upon that finding. I dissent from our refusal to do so.

/S/ PATRICIA COTTER

Justice John Warner dissents.

¶27 I dissent. The District Court erred when it increased the present value of the parties' retirement accounts by adding projected cost-of-living increases provided for in 10 U.S.C. § 1401a. Such increase in the value of the parties' retirement accounts is both unreasonable and contrary to law.

¶28 Contrary to the Court's statement at ¶22, Brian's citation to 10 U.S.C. § 1401a provides authority for his arguments to both the District Court and to this Court. As the Court indicates, 10 U.S.C. § 1401a requires that military pay be increased annually to reflect cost-of-living adjustments based on the Consumer Price Index. However, the Court fails to take into account that the statute sets forth a methodology for determining what that cost-of-living adjustment *could* be. It is entirely possible that in any given year the cost-of-living adjustment will be zero. The statute only mandates a cost-of-living increase if the Consumer Price Index shows that the cost of living increased. If it does not, the statute provides that there shall be no increase.

¶29 Nor does the statute indicate how much of a cost-of-living increase there may be in any given year. While it is true that there has been a history of yearly increases, it

10

requires substantial speculation to fix the amount of each cost-of-living increase for the next five decades, and include that increase in the calculation of the value of a marital estate.

¶30 Furthermore, including future cost-of-living increases when assessing the marital estate turns the valuation process on its head. The marital estate is valued at or near the time of dissolution. *Beck v. Beck*, 203 Mont. 455, 458, 661 P.2d 1282, 1284 (1983); *In re Marriage of Loegering*, 212 Mont. 499, 506, 689 P.2d 260, 264 (1984). Doing so provides the most accurate view of the status of the property at the time of trial. *See Hamilton v. Hamilton*, 186 Mont. 282, 283, 607 P.2d 102, 102 (1980). Section 40-4-202, MCA, also requires that the court divide the marital estate at dissolution. The statute does not provide that the court divide what it anticipates the marital estate may be in the future.

¶31 Potential cost-of-living increases that are effective only after the marriage has ended are not a part of the couple's marital property at the time of dissolution. Such property does not exist for the Court to divide. Any increase in the value of a parties' retirement account will occur, if at all, after the marriage has been dissolved. Thus, such increases must not be considered as an existing part of the marital estate in which both parties have an interest. Section 40-4-202, MCA.

¶32 In this case, by including the potential future cost-of-living adjustments, the District Court increased the value of Brian's retirement account from $432,171 to $576,680 – a significant increase indeed. In doing so, the District Court both incorrectly

11

valued the marital estate at the time of its decree of dissolution, and also included in the estate speculative increases that will only be acquired, if at all, after dissolution of Brian and Kim's marriage. Such is error.

¶33 I dissent to the Court's resolution of issue two. I would remand for a determination of the proper value of the marital estate and an equitable distribution thereof.

/S/ JOHN WARNER

Justices Patricia O. Cotter and Jim Rice join in the foregoing dissent.

/S/ PATRICIA COTTER
/S/ JIM RICE