No. 89-304

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN RE THE MARRIAGE OF

RONALD L. SKINNER,

        Petitioner and Appellant,

   and

LUCINDA G. SKINNER,

        Respondent and Respondent.

APPEAL FROM:  District Court of the Fourth Judicial District
                In and for the County of Missoula
                The Honorable James Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        James P. O'Brien, O'Brien Law Offices,
        Missoula, Montana

    For Respondent:

        Paulette C. Ferguson, Missoula, Montana

Submitted on Briefs: October 20, 1989

Decided:  December 19, 1989

FILED

Filed '89 DEC 19 AM 9 30

ED SMITH, CLERK
MONTANA SUPREME COURT

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Ronald Skinner appeals the decision of the District Court of the Fourth Judicial District, Missoula County, awarding his former wife, Lucinda Skinner, property, maintenance payments and attorney's fees and requiring him to pay all marital debts. We affirm.

The appellant presents the following issues for review:

1. Did the District Court err in failing to make adequate findings of fact before dividing the marital property?

2. Did the District Court err in awarding maintenance to the respondent in the amount of $300/month for three years?

3. Did the District Court err in awarding attorney's fees to the respondent?

Ronald and Lucinda Skinner began living together in mid-1980 and on December 5, 1982 the couple married. This was the second marriage for both and each had children from previous marriages, but no children were born of this union. Both parties are 40-year-old high school graduates with some college education.

Throughout the marriage Ronald has been employed as a millwright at Stone Container's Frenchtown plant. He was making approximately $14.50 per hour when the couple wed and at the time of these proceedings his wage was $17.65 per hour. Lucinda worked at various jobs during the marriage but at the time of dissolution was making $6.32 per hour as a lab assistant at Missoula Community Hospital where she has been employed since 1984. At one time Lucinda was a maintenance engineer for Champion International but had quit, at Ronald's

request, in order to work at the couple's ranch and be available to Ronald's children and her daughter.

Prior to the marriage Ron bought property, known as the "Kidd property," which was sold and money from sale of the Kidd property was used to purchase the "Hoover property" in 1980. The Hoover property, located just outside of Stevensville, Montana, became the marital residence. When the couple separated in 1986, Ronald remained at the marital home, while Lucinda rented an apartment in Stevensville.

Ronald Skinner petitioned for dissolution in June, 1987. Following a hearing, the District Court entered a Decree of Dissolution on November 2, 1987, but reserved all other issues for final hearing. A hearing on the remaining issues was held January 14, 1988 from which the court made Findings of Fact and Conclusions of Law, and entered an Order on June 28, 1988. A month later, on Ronald's motion, the court granted a new trial limited to new evidence. After the new trial in July, 1988, Lucinda moved for a stay in the proceedings in order to present additional evidence. The District Court granted the stay and additional evidence was taken on November 18, 1988. Based on the evidence from the additional hearings, the District Court amended its earlier Findings of Fact, Conclusions of Law and Order and filed the amended version on February 6, 1989.

During the course of the proceedings, Ronald seriously injured his left hand while replacing a window in his girlfriend's house and did not work from February 27, 1988 to October 3, 1988. While he was convalescing Ronald received accident and sickness insurance payments of approximately $950 per month, but received full pay and benefits upon his return to work.

3

Before the injury Ronald moved from the marital home and moved in with his girlfriend. Also pre-injury, Ronald stopped making payments on the marital property (the Hoover property) and withheld this information from the District Court at the January 14, 1988 hearing. This non-payment eventually caused the property to be foreclosed upon and sold at sheriff's sale. Ronald did not attempt to sell the property prior to the foreclosure.

The marital estate had also been dissipated by Ronald's sale of certain livestock after the parties separated, in violation of the court's restraining order. Ronald deposited most of these proceeds in his own account, but did put $5,000 from the sale of cattle into a trust account in recognition of Lucinda's share. Additionally, Ronald deliberately misled the District Court regarding the sale of a bull. Ronald also deposited in his own account the entire amount of the couple's refund from their joint Federal and State income tax returns. Ronald also deposited $5,000 of marital monies into a savings account in the name of the girlfriend he now lives with.

During the marriage, Lucinda inherited approximately $19,000 from her mother's estate. Some of this money was invested in stocks and some was placed in a Kemper account on which both parties wrote checks. The majority of the inheritance was used up during the marriage, but the remaining $5,546 is now held jointly by Lucinda and her daughter.

Before discussing the issues presented on appeal, we will address the problem of bifurcation of issues in a dissolution proceeding. Section 40-4-104, MCA, provides:

> (1) The district court shall enter a decree of dissolution of marriage if:

4

. . .

> (d) to the extent it has jurisdiction to do so, the court has considered, approved, or made provision for child custody, the support of any child entitled to support, the maintenance of either spouse, and the disposition of property.

In this case we note the District Court entered a decree of dissolution of the marriage on November 2, 1987, and it was not until February 6, 1989 that the District Court filed its final judgment relating to the disposition of the marital property. The requirement of § 40-4-104(1), MCA, was not met. The District Court should have entered judgment relating to the disposition of marital property before entering the decree of dissolution of the marriage.

Although we will not find reversible error in this instance, we call to the attention of the bench and bar the necessity to comply with the above statute.

In the past, before the amendment of § 40-4-104(1), MCA, in 1985, this Court notes that too often appeals were filed involving a delay of months, and occasionally years, between the decree of dissolution and the final judgment relating to child custody, support of any child entitled to support, the maintenance of either spouse and the disposition of property. The delays that occurred were often intolerable resulting in a complete failure of the administration of justice. In re Marriage of Krause (1982), 200 Mont. 368, 654 P.2d 963; and In re Marriage of Loegering (1984), 212 Mont. 499, 689 P.2d 260.

Along with the above-noted statute, the court should also consider the provisions of § 40-4-201(1), MCA, in dissolution cases.

5

Issue 1. Did the District Court err in failing to make adequate findings of fact before dividing the marital property?

Division of marital property is governed by statute:

(1) In a proceeding for dissolution of a marriage, legal separation, or division of property following a decree of dissolution of marriage or legal separation by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to divide the property, the court, without regard to marital misconduct, shall, and in a proceeding for legal separation may, finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit. In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent; the increased value of property acquired prior to marriage; and property acquired by a spouse after a decree of

6

legal separation, the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202(1), MCA.

As this statute and Montana case law makes clear, "Equity, not equality, should guide the District Court's discretion in dividing the marital estate." In re Marriage of Fitzmorris (Mont. 1987), 745 P.2d 353, 354, 44 St.Rep. 1809, 1811.

The District Court holds far-reaching discretion in dividing marital property. In re Marriage of Dirnberger (Mont. 1989), 773 P.2d 330, 332, 46 St.Rep. 898, 900 (quoting In re Marriage of Stewart (Mont. 1988), 757 P.2d 765, 767, 45 St.Rep. 850, 852, and In re Marriage of Watson (Mont. 1987), 739 P.2d 951, 954, 44 St.Rep. 1167, 1170). Furthermore, the standard of review for property division is that the District Court's judgment, when based upon substantial credible evidence, will not be altered unless a clear abuse of discretion is shown. Id.

Ronald argues that the District Court's findings and conclusions were insufficient for that court to determine the parties' net worth in order to make an equitable division of the marital property. A district court is obligated to make a finding of net worth before dividing the marital estate.

7

Schultz v. Schultz (1980), 188 Mont. 363, 365, 613 P.2d 1022, 1024. Such finding of net worth, however, need not be stated in a finding of fact as an exact amount. It is only necessary that "the cumulative effect of the findings can be equivalent to a finding of net worth when relevant factors are considered and adequately set forth by the trial court." In re Marriage of Hunter (1982), 196 Mont. 235, 245, 639 P.2d 489, 494.

Ronald complains that of the court's 60 plus finding and conclusions in the original Findings of Fact and Conclusions of Law (which were incorporated into the amended version), only five dealt with the parties' liability. Ronald contends that these few findings concerning liability were inadequate to determine net worth and, thus, inadequate to make an equitable division of property. Having reviewed the Findings of Fact and Conclusions of Law, filed after both the January 14, 1988 and November 18, 1988 hearings, we hold that the findings provide a sound foundation for the court's judgment. As we have previously noted:

> This foundation need not consist of a multitude of evidentiary facts, but the findings of fact must set forth a recordation of the essential and determining facts upon which the court rested its conclusions of law and without which the judgment would lack support.

Stratford v. Stratford (Mont. 1981), 631 P.2d 296, 298, 38 St.Rep. 1093, 1095.

In the case at bar, the District Court, while not making a totally exhaustive list, did set forth the essential and determining facts from which it drew conclusions of law that supported its judgment. The few findings that deal with the parties' liabilities are adequate, and, taken together

8

with the other findings and conclusions, the parties' net worth is capable of being determined. We hold that there was no abuse of discretion.

Furthermore, we hold that the District Court equitably divided the couple's property, within the requirements of § 40-4-202, MCA, pertinent to the situation: Ronald, in defiance of the court's restraining order dissipated the marital estate; there was extensive testimony regarding assets and liabilities of the parties, with the court's findings detailed in the findings and conclusions; the contribution to the marriage of both parties were considered; the disparity between the real income and earning potential of Ronald and Lucinda were noted; and the obligation to support children from prior marriages was set out. The findings of fact and conclusions of law support the District Court's judgment, and we conclude an equitable distribution was made.

> Issue 2. Did the District Court err in awarding maintenance to the respondent in the amount of $300/month for three years?

Section 40-4-203, MCA, sets out the guidelines for awarding a spouse maintenance in a dissolution proceeding. Maintenance may only be awarded if the spouse seeking maintenance lacks sufficient property to provide for that spouse's reasonable needs. Section 40-4-203(1), MCA. The statute also mandates that the trial court consider relevant facts of the situation including the financial resources of the spouse seeking maintenance, the ability of the maintenance paying spouse to meet his own needs, and the standard of living established during the marriage. Section 40-4-203(2), MCA.

9

In reviewing the award of maintenance, we once again note the latitude accorded the trial court:

> An award of maintenance is related only to the needs of the spouse seeking maintenance . . . The District Court has wide discretion in the determination of maintenance awards, and that discretion is not to be disturbed unless clearly erroneous. (Citations omitted.)

In re Marriage of Aanenson (1979), 183 Mont. 229, 235, 598 P.2d 1120, 1123.

The District Court made a specific finding that Lucinda needs the maintenance payments to meet her monthly expenses and Ronald is capable of making the payment. There is substantial evidence in the record to support this finding. Ronald makes over $35,000 per year while Lucinda is paid much less. Ronald also has more disposable income since he no longer makes land payments and does not pay rent since he now lives with his girlfriend. Ronald asserts that Lucinda received sufficient property in the property division to support herself. However, the court awarded Lucinda, based on her contributions, only twenty percent of the value of the property.

In establishing the amount and duration of maintenance it is appropriate for the District Court to consider whether the assets awarded in the property division consume or produce income and whether employment is appropriate. Bowman v. Bowman (Mont. 1981), 633 P.2d 1198, 1200-1201, 38 St.Rep. 1515, 1518. Additionally, "appropriate employment" must be determined with relation to the standard of living achieved by the parties during the marriage. In re Marriage of Madson (1978), 180 Mont. 220, 224-225, 590 P.2d 110, 112.

10

The property awarded Lucinda is not income producing nor does she make enough money through her employment to maintain her former standard of living. There is substantial evidence to support the District Court's decision.

> Issue 3. Did the District Court err in awarding attorney's fees to the respondent?

Attorney's fees in dissolution cases are addressed in § 40-4-110, MCA, which provides:

> Costs -- attorney's fees. The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

In interpreting this statute, this Court has found:

> "Traditionally, a showing of necessity has been a condition precedent to the exercise of the court's discretion to award attorney fees. Whitman v. Whitman (1974), 164 Mont. 124, 519 P.2d 966. But the lower court's discretion in the matter will not be disturbed if substantial evidence is found in the record to support the award." Kaasa v. Kaasa (1979), Mont., 591 P.2d 1110, 1114, 36 St.Rep. 425, 430.

> "Here, the trial court was well aware of the parties' financial situations. It did not abuse its discretion in making an award of reasonable attorney fees, based on necessity. Houtchens v. Houtchens

11

(1979), 181 Mont. 70, 592 P.2d 158, 36 St.Rep. 501, 505." Bailey v. Bailey (1979), Mont., 603 P.2d 259, 261, 36 St.Rep. 2162.

Carr v. Carr (1983), 205 Mont. 269, 272-73, 667 P.2d 425, 427.

In the case at bar, there was great financial disparity between the parties. As discussed above, Ronald makes approximately three times Lucinda's salary, and his disposable income has increased since the parties divorced. Based on this evidence, the trial court did not abuse its discretion in awarding Lucinda attorney's fees.

We affirm the District Court's judgment.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12