No. 95-162

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE MARRIAGE OF

ANN MARIE BUKACEK,

       Petitioner and Respondent,

  and

EDWARD PAUL JANES,

       Respondent and Appellant.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
               In and for the County of Lincoln,
               The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Peter F. Carroll, Attorney at Law,
          Kalispell, Montana

     For Respondent:

          L. Charles Evans, Attorney at Law,
          Libby, Montana

FILED

NOV 21 1995

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  November 2, 1995

           Decided:  November 21, 1995

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Petitioner Ann Marie Bukacek filed a petition for dissolution of her marriage to Edward Paul Janes, in the District Court for the Twentieth Judicial District in Lincoln County. Following numerous hearings, the District Court entered its decree in which it awarded the parties joint custody of their four minor children and designated Ann the primary custodian. The court also divided the couple's marital estate, provided for child support, and ordered Ann to pay maintenance to Ed for one year. Ed appeals from the District Court's decree. We affirm the District Court.

There are five issues presented on appeal:

1. Did the District Court have continued jurisdiction after stating at the initial proceeding that the dissolution was granted?

2. Did the District Court abuse its discretion when it enforced that part of the couple's settlement agreement which related to property division, but refused to enforce provisions related to child custody, child support, and maintenance?

3. Did the District Court adequately consider the children's preferences when it made its child custody determination?

4. Did the District Court abuse its discretion when it determined that Ann should have primary residential custody of the children?

5. Did the District Court demonstrate bias which prevented it from impartially deciding the issues presented?

2

## FACTUAL BACKGROUND

Ann and Ed were married in Lane County, Oregon, on April 26, 1978. Soon afterward, Ann expressed a desire to continue her education. With Ed's support, she earned her undergraduate degree and enrolled in medical school. In 1989, Ann completed a three-year medical residency.

Ann and Ed had four children while Ann was pursuing her medical education. During that time, Ed was not employed and served as the homemaker and primary caretaker for the children. Although Ann devoted a great deal of her energy to her studies and her residency, she shared as much as possible in child care and housekeeping responsibilities.

In 1989, Ann and Ed and their four children moved to Redmond, Oregon, where Ann worked as a physician with a local hospital and established a private practice. Ed remained the children's primary caretaker during this time.

The parties and their children moved to Libby, Montana, in December 1991. Ann and Ed separated immediately, and Ann filed a petition for dissolution with the District Court. Pursuant to a written settlement agreement, Ann appeared before the court for entry of a decree by default on February 24, 1992. The District Court expressed concern about support provisions in the agreement, and recommended that tax consequences be considered, and that further advice be considered. The court did, at that time, indicate that the dissolution would be granted.

3

After the first hearing, the parties were unable to reach an agreement on the issues of child custody and support. Although Ann first agreed that Ed should have primary residential custody of the children, she later became concerned about his emotional stability and hostility. By the time of trial in September 1993, each party sought primary residential custody of the children.

On December 20, 1994, the District Court entered a decree of dissolution. The court awarded joint custody of the four children to both parties, and designated Ann the primary residential parent. The court also approved the distribution of marital property set forth in the parties' original February 1992 property settlement agreement, relieved Ed of child support payments for one year, and ordered Ann to pay maintenance to Ed for one year.

ISSUE 1

Did the District Court have continued jurisdiction after stating at the initial proceeding that the dissolution was granted?

A decree of dissolution is final when entered subject to the right of appeal. Section 40-4-108(1), MCA. Ed contends that the District Court's oral statement during the initial hearing to the effect that the dissolution was granted had the effect of a final decree and divested the court of further authority to act.

The term "decree" includes the term "judgment." Section 40-4-103(4), MCA. The Montana Rules of Civil Procedure define "judgment" as "the final determination of the rights of the parties in an action or proceeding . . . and includes a decree . . . ." Rule 54(a), M.R.Civ.P. (emphasis added). Although the District

4

Court in this case purported to orally grant the parties' dissolution at the initial hearing, that statement was by no means a "final determination" of the couple's rights. As the court stated at that time, the issues of child custody, support, and maintenance had yet to be decided. Furthermore, the court later acknowledged that it had no jurisdiction to grant a dissolution without resolving those related issues. In a written memorandum, the court stated:

> During the course of the hearing which was held on February 22, 1993, the Court advised that it would prepare and enter a decree of dissolution. However, the Court has subsequently determined that it is without jurisdiction to enter the decree of dissolution at this time. See 40-4-104(d) MCA and *In re Marriage of Skinner*, [240 Mont. 299], 783 P.2d 1350 (Mont. 1989).

We therefore conclude that the court's statement at the initial hearing to the effect that the parties' marriage was dissolved did not divest it of jurisdiction to act further in this case.

## ISSUE 2

Did the District Court abuse its discretion when it enforced that part of the couple's settlement agreement which related to property division, but refused to enforce provisions related to child custody, child support, and maintenance?

When a district court determines the conscionability of a marital and property settlement agreement it

> engage[s] in discretionary action which cannot be accurately categorized as either a finding of fact or a conclusion of law. These discretionary judgments made by the trial court are presumed to be correct and will not

5

be disturbed by this Court absent an abuse of discretion by the lower court.

*In re Marriage of Caras* (1994), 263 Mont. 377, 380-81, 868 P.2d 615, 617 (quoting *In re Marriage of Hamilton* (1992), 254 Mont. 31, 36, 835 P.2d 702, 704-05) (alteration in original).

Ed contends that the District Court abused its discretion when it found that the terms of the parties' settlement agreement which pertained to child custody, support, and maintenance were unconscionable. He further contends that if the agreement was unconscionable, the court should not have approved the division of property included in the agreement.

Section 40-4-201(2), MCA, provides:

> In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except those providing for the support, custody, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.

In *In re Marriage of Simms* (1994), 264 Mont. 317, 325-26, 871 P.2d 899, 904, we clarified the district court's obligations:

> In short, in a marriage dissolution case . . . [t]he district court . . . is not bound by the parties' oral or written agreements or stipulations in matters of custody, support and visitation (the applicable statutory criteria always being paramount), and is bound on the matters of property division and maintenance only to the extent that the parties' agreement is reduced to writing and is found, after review, to be not unconscionable.

In this case, the parties' written agreement settled the distribution of the couple's real and personal property; designated Ed as the children's primary residential custodian for so long as

6

he lived in the same city as Ann; required Ann to pay Ed's residential expenses of up to $1000 per month; and provided that Ed would receive one-half of Ann's disposable income for ten years.

As provided in *Simms*, the District Court was not bound by the agreement's provisions related to child custody and support, and was bound by the provisions regarding property division and maintenance only to the extent that the court found them to be conscionable.

We conclude that the District Court did not abuse its discretion when it held that the maintenance award was unconscionable. The court alerted the parties to its concerns about the maintenance provision at the first hearing. At that time, the court indicated that it would not sign the agreement until it was modified and reviewed by a certified public accountant. The court's concerns were well-founded. The settlement agreement did not indicate whether the monthly payments to Ed were child support or maintenance, and did not set forth how the monthly figure for Ann's disposable income would be determined. Furthermore, the court's request that the agreement be re-written was authorized pursuant to § 40-4-201(3), MCA, which provides that:

> If the court finds the separation agreement unconscionable, it may request the parties to submit a revised separation agreement or may make orders for the disposition of property, maintenance, and support.

The parties did not submit a revised agreement which addressed the court's concerns about the maintenance provision. Therefore, since the court held that the original agreement was unconscionable, it

7

was free to make its own order with regard to the issue of maintenance.

We further hold that the District Court did not abuse its discretion when it held that the written property settlement was conscionable. As the court noted, both parties testified at trial that their agreed-upon distribution of the marital estate was fair and equitable. In addition, Ed stated in his consent to entry of default that "[he did] not have any complaint about the Property Settlement . . . ." As the District Court noted, the agreement results in a net distribution to Ed of approximately $40,000 and to Ann of approximately $35,000. In addition, the agreement requires Ann to assume all remaining marital obligations, which total over $175,000. In light of these circumstances, the court clearly did not abuse its discretion when it upheld the property distribution provisions in the agreement.

For these reasons, we affirm the District Court's treatment of the parties' settlement agreement.

## ISSUE 3

Did the District Court adequately consider the children's preferences when it made its child custody determination?

Because the district court is in a superior position to weigh evidence, we will not overturn the court in child custody matters unless we determine that there has been a clear abuse of discretion. *In re Marriage of Bolt* (1993), 259 Mont. 54, 58, 854 P.2d 322, 324.

8

Ed claims that the District Court abused its discretion because it did not question the children directly regarding their custodial preferences. He maintains that the psychological custody evaluation ordered by the court did not discuss the children's preferences, and that the District Court record is devoid of any indication that the court considered the children's preferences as a factor in its custody determination.

Children's preferences for custody are a factor which should be considered by the district court. Section 40-4-212(b), MCA. However, the court need not interview the children to discern their preferences. *In re Marriage of Susen* (1990), 242 Mont. 10, 12, 788 P.2d 332, 334. It may rely on the evaluation of a professional counselor. *Bolt*, 854 P.2d at 325. If the court does not interview the children, it is not required to make specific factual findings regarding the children's preferences. *In re Marriage of Hickey* (1984), 213 Mont. 38, 42, 689 P.2d 1222, 1224.

In this case, the children's wishes were adequately addressed by Dr. John Santa, who was appointed by the court to perform a custody evaluation. Although Dr. Santa did not directly ask the children where they wanted to live, he did interview each child regarding "their views of their situation," and made specific reference to the children's views of their parents and their lifestyles with each parent. From this report, the court could have accurately discerned the children's preferences. In fact, as evidenced by the court's many references to that report, it is

9

clear that the court read and considered Dr. Santa's recommendations as a basis for its final determination.

Therefore, because the District Court appointed a professional counselor who set forth his opinions about the children's preferences in a custody evaluation report, and because the court considered that report in its decree, we hold that the court did not abuse its discretion because it did adequately consider the children's preferences.

## ISSUE 4

Did the District Court abuse its discretion when it determined that Ann should have primary residential custody of the children?

We review a district court's underlying findings of fact in a child custody case to determine whether those findings are clearly erroneous. *In re Marriage of Dreesbach* (1994), 265 Mont. 216, 220-21, 875 P.2d 1018, 1021. This Court will overturn the district court's final custody award which is based on those findings only when an abuse of discretion is clearly demonstrated. *Dreesbach*, 875 P.2d at 1021.

Section 40-4-212, MCA, lists the relevant factors that a district court must consider when it makes a child custody determination. The factors include the preferences of the parties, the preferences of the children, the interaction and interrelation-ship between the children and their family, and the children's adjustment to home, school, and community. The court is not required to make specific findings which address each factor, but

10

it must set forth the "essential and determining" factors on which its determination is based. *In re Marriage of Merriman* (1991), 247 Mont. 491, 493, 807 P.2d 1351, 1353.

In its decree, the District Court concluded that:

[U]pon consideration of all relevant factors, including those set forth in § 40-4-212, MCA (1991), it is in the best interests of the parties' minor children for them to be in the joint custody of the parties, with [Ann] designated the primary residential parent.

On appeal, Ed contends that the court's determination does not fairly represent the record. Ed contends that the District Court accepted Ann's concerns without an independent review of the facts; that the court failed to fairly review Ed's record as the primary provider for his children; and that the court either ignored or misconstrued facts concerning the children's welfare.

We have thoroughly reviewed the record, however, and find that the District Court did consider such factors as the wishes of Ann and Ed, the children's preferences, the interrelationships between the parties and their children, the children's adjustment to Libby, and the mental health of both Ann and Ed when it made its custody determination. Specifically, the court set forth the following facts in its decree: The court addressed Ann's concerns about Ed's emotional instability and his attempts to alienate the children from Ann; the court set forth Dr. Santa's findings that Ann was an "emotionally stable" parent who "obviously loves, and cares for her children," and who is "supportive of the children and their school work and activities"; and the court noted that Ed's plan to move to Kalispell with the children would not serve the children's best

11

interests because they would lose Ann's "considerable warmth, and nurturing" and because Ed had failed to create an identity of his own unrelated to the children. In addition, the court addressed the issue of Ed's continued bitterness toward Ann throughout the dissolution proceedings, stating:

> [Ed] has made it clear, at each hearing that has been conducted, that he considers [Ann] immoral, unsuited to have the custody of the children, and that he has made this clear to the children; notwithstanding the Court has remonstrated with [Ed] about this attitude, it has not changed.

Finally, in a written memorandum attached to the December 1993 decree, the court stated:

> This has been one of the most difficult dissolutions that I have had. There is no question of the closeness between the father and the children; by the same token, the children are equally fond of their mother. The father has been so distraught about the dissolution that becoming the residential custodian has been an obsession. His remarks concerning the children's mother in the presence of the children are sufficient to terminate any visitation; and but for the love that the children have for their father, visitation would be terminated. Nevertheless, that cannot continue.

We conclude that the District Court's findings of fact are not clearly erroneous, and that the court did not abuse its discretion when it awarded Ann primary physical custody of the children.

### ISSUE 5

Did the District Court demonstrate bias which prevented it from impartially deciding the issues presented?

Ed contends that the District Court was biased against shared custody and did not award shared custody because of this bias. He further asserts that the court failed to seriously consider his

request for maintenance because of his gender. He contends that because he is a male the court imputed income to him that would not have been imputed had he been a woman. We find no merit to these allegations.

The record is clear that neither Ann nor Ed wanted to continue a shared custody arrangement, and that the court considered all the necessary factors when it made its child custody determination. As the court stated in its findings, "[b]oth parties testified that they do not believe it is in the best interests of their children to continue this shared parenting situation." Furthermore, although Dr. Santa recommended shared parenting in his evaluation, the court pointed out Dr. Santa's concerns that the animosity of the parties toward each other and that the different parenting styles might make joint parenting unworkable. Finally, although the court did state that it was "prejudiced" against shared visitation, its statement was made against the backdrop of a two-year custody battle in which the parties' children had been shuttled back and forth daily between Ann's and Ed's homes. As the court stated:

> I feel some of the problems that you are having have been testified to and when you have children back and forth like a yoyo, you are going to get behavioral problems that you really can't blame on anybody.

Ed's claim of gender bias is also unsupported. The court awarded maintenance in the sum of $500 per month for one year, even though it expressed concerns that Ed had failed to take advantage of educational opportunities throughout his marriage and that Ed's

13

unemployment at the time of the trial was not wholly unintentional. In addition, the record is clear that the court imputed income to Ed not on the basis of his gender but because Ed was capable of employment but had chosen to forsake several opportunities to be available full-time for his children. It is clear that gender was not the basis for the court's maintenance decision.

For these reasons, we conclude that Ed's claim of bias is without merit.

We affirm the decree of the District Court.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

14