No. 99-333

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 30N

IN RE THE MARRIAGE OF

CLYDE HAROLD CREWS, JR.,

Petitioner and Respondent,

and

CYNTHIA McKEOWN CREWS,

Respondent and Appellant.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Glacier,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD

For Appellant:

David F. Stufft, Attorney at Law, Kalispell, Montana

For Respondent:

Robert G. Olson; Frisbee, Moore & Olson, Cut Bank, Montana

Submitted on Briefs: October 28, 1999

Decided: February 7, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1.Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2.Cynthia McKeown Crews (Cindy) appeals from the judgment entered by the Ninth Judicial District Court, Glacier County, on its Findings of Fact, Conclusions of Law and Order in this marital dissolution action. We affirm.

¶3.Cindy raises the following issues:

¶4. Did the District Court abuse its discretion in determining the net worth of the marital estate?

¶5. Did the District Court abuse its discretion in distributing the marital estate?

¶6. Did the District Court err in awarding Cindy too little maintenance and for too short a period of time?

BACKGROUND

¶7.Cindy and Clyde Harold Crews, Jr. (Hal) married in 1976 and separated in August of 1997. Their one child, Cory, was born on December 24, 1980, and lived with Cindy after the separation. Hal subsequently petitioned for dissolution of the marriage and, in March of 1998, the District Court ordered Hal to pay Cindy $1,500 per month temporary maintenance and $500 per month child support.

¶8.The hearing on Hal's petition for dissolution was held on October 1 and 2, 1998, at

which time Cindy was 47 years old and Hal was 48. Both parties, as well as additional witnesses, testified at the hearing and documentary evidence was admitted.

¶9.On April 5, 1999, the District Court entered its findings, conclusions and order dissolving the marriage. In pertinent part, the court found that Cindy had retired from her 25-year teaching position in the summer of 1997, was receiving retirement benefit payments of $1,265 per month, remained certified to teach health and physical education in elementary and junior high schools, had sought employment in those areas after Hal petitioned for dissolution, and was not employed at the time of the hearing. Cindy had a history of adjustment disorder with depressed mood, but was undergoing counseling at the time of the hearing; her condition had improved from an earlier time when it affected her employability. Hal was a master electrician who operated a business known as 3-C Electric (3-C), owned by himself and Cindy. Hal's 1997 income tax returns reflected approximately $70,000 in income, before taxes, from 3-C. The court also made findings regarding the parties' property, excluding from the marital estate Cindy's interest in real property located on Flathead Lake, and valued the marital assets capable of capital appreciation or of generating income.

¶10.The District Court ultimately distributed the marital estate, awarded child support of $750 per month from Hal to Cindy, determined Cindy was entitled to temporary maintenance to assist with transition in employment, and awarded the maintenance until September 1, 1999. Judgment was entered accordingly and Cindy appeals.

## STANDARD OF REVIEW

¶11.We review a district court's underlying findings of fact regarding the division of marital property to determine whether they are clearly erroneous. In re Marriage of Engen, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26. With regard to discretionary rulings, including marital estate distributions and valuations of marital property, we determine only whether the district court abused its discretion. *See* In re Marriage of Rada (1994), 263 Mont. 402, 405, 869 P.2d 254, 255. The test for abuse of discretion in a dissolution proceeding is "whether the district court acted arbitrarily without employment of conscientious judgment" or whether the district court "exceeded the bounds of reason resulting in substantial injustice." *Marriage of Engen*, ¶ 26 (citation omitted).

## DISCUSSION

¶12. Did the District Court abuse its discretion in determining the net worth of the marital estate?

¶13. The District Court expressly valued the marital assets which were capable of producing income or which had the potential for capital appreciation at a total net value of $439,087, distributed assets to Hal valued at approximately $235,000 and to Cindy valued at approximately $205,000 and ordered an equalizing payment from Hal to Cindy in the amount of $15,000. With regard to personal property, the court awarded Cindy the parties' 1997 Ford pickup and Hal the golf cart and travel trailer, without valuing the items. The court did not expressly value or distribute other personal property, but the record contains evidence regarding valuations and which party had received--or was to receive--the property.

¶14. Cindy contends the District Court erred in failing to value each item of personal property awarded to Hal for purposes of establishing the overall net value of the marital estate, under our long-standing requirement that a trial court must determine the net worth of a marital estate prior to equitably distributing the estate. *See, e.g.*, Schultz v. Schultz (1980), 188 Mont. 363, 365, 613 P.2d 1022, 1024. We disagree.

¶15. We observe at the outset that Cindy cites to no authority which requires the trial court to value every single item of personal property in determining the net value of the marital estate. In this regard, § 40-4-202(1), MCA, requires only an equitable distribution of the parties' marital property, and we have stated that the generally required finding of net worth "need not be stated in a finding of fact as an exact amount." It is sufficient if the cumulative effect of the court's findings can be equivalent to a finding of net worth under all relevant factors. *See* In re Marriage of Skinner (1989), 240 Mont. 299, 304, 783 P.2d 1350, 1353 (citation omitted). Here, the District Court valued the marital assets capable of capital appreciation or of generating income--which included all major marital assets--and set their total net value at $439,087. Furthermore, with regard to the items of personal property, the parties did not generally dispute who was to receive them.

¶16. We need address Cindy's specific complaints with regard to the court's failure to value certain items of property and then determine the net worth of the marital estate prior to distribution only briefly, noting that her arguments present a totally one-sided view of the distribution of personal property and the value of that property. According to Cindy, the personal property Hal received--but which the District Court did not value--had a total value of approximately $34,500, a valuation based almost totally on her own testimony.

The record reflects, however, that the parties' evidence was in conflict regarding the valuation of some of the property and the court--if it had valued that property--was free to accept Hal's valuation. *See* Kovarik v. Kovarik, 1998 MT 33, ¶ 30, 287 Mont. 350, ¶ 30, 954 P.2d 1147, ¶ 30. In addition, while Cindy's $15,000 valuation of the home furnishings is supported by the record, the record reflects that Hal received only two-thirds of those furnishings, including the model airplane collection Cindy valued separately at $1,000. In short, our review of the evidence of record indicates that, had the District Court separately valued the personal property awarded to Hal, a value supported by the record would be approximately $26,000.

¶17.Juxtaposed against this supposed "windfall" of marital assets Cindy attributes to Hal as a result of the District Court's failure to specifically value each item of personal property before valuing the total marital estate is personal property Cindy received which also was not expressly valued by the court. That property included a 1997 Ford pickup valued at $13,000, and on which Hal assumed the debt of approximately $10,000; the one-third share of the home furnishings Cindy took with her at a value of approximately $5,000; and the approximately $6,000 in the parties' checking account at the time of their separation which Cindy kept. Even excluding the debt assumed by Hal of $10,000, the personal property Cindy received had a value of approximately $24,000.

¶18.On this record, the parties received substantially equal amounts of personal property not expressly valued by the District Court, with the result that separately valuing that property would have had no significant impact on the overall valuation of the marital assets. On that basis and on this record, we conclude the District Court did not abuse its discretion in determining the net worth of the marital estate.

¶19.. Did the District Court abuse its discretion in distributing the marital estate?

¶20.Pursuant to § 40-4-202(1), MCA, a district court's obligation in a dissolution proceeding is to equitably apportion the parties' marital estate. As set forth above, the District Court in the present case valued the marital assets capable of capital appreciation or of generating income at a total of $439,087. It distributed assets valued at $234,571 to Hal and assets worth $204,516 to Cindy. The court then required Hal to make an equalizing payment to Cindy in the amount of $15,000, resulting in net marital assets to Hal in the amount of $219,571 and to Cindy in the amount of $219,516. Cindy contends this distribution is inequitable. We disagree.

¶21.Cindy's argument relates primarily to her request that the District Court consider her purported lost future earnings of $310,000 and lost teacher's retirement benefits of $69,000--allegedly lost as a result of misrepresentations or deceptions by Hal toward her--as marital assets and then increase her share of the total marital estate accordingly. The District Court denied her requests, observing that the claims sounded like "some sort of a tort claim based upon, I don't know, fraud, whatever" or fault-based allegations.

¶22.Cindy cites to no authority as required by Rule 23(a)(4), M.R.App.P., in support of her argument that such nonexistent "assets" properly could be included in the marital estate subject to equitable distribution. Absent such authority, and recognizing that the appellant bears the burden of establishing error by the trial court (*see* Duck Inn, Inc. v. Montana State Univ. (1997), 285 Mont. 519, 523, 949 P.2d 1179, 1181), we decline to address this argument further.

¶23.Cindy also contends, in one sentence, that the District Court "fail[ed] to equitably divide the assets based upon the income, vocational skills, employability and needs of each of the parties" as required by § 40-4-202(1), MCA. She advances no rationale or authority for this argument that the court's 50%-50% distribution in this case was not equitable and, as a result, she has not met her burden of establishing error. *See Duck Inn, Inc.,* 285 Mont. at 523, 949 P.2d at 1181.

¶24.We conclude that the District Court did not abuse its discretion in distributing the marital estate.

¶25. Did the District Court err in awarding Cindy too little maintenance and for too short a period of time?

¶26.Maintenance awards generally are not favored in Montana. In re Marriage of Luisi (1988), 232 Mont. 243, 247, 756 P.2d 456, 459. Indeed, maintenance can be awarded only if the court finds that the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. If these criteria are met, the maintenance awarded should be in an amount which takes into account specific statutory factors. *See* §§ 40-4-203(1) and (2), MCA.

¶27.In the present case, the District Court orally ordered temporary maintenance for Cindy in the amount of $1,500 per month on March 18, 1998. In its subsequent findings, conclusions and order, the court found that Cindy was 47 years old; had retired from her

teaching position in the summer of 1997, after approximately 25 years; was college educated and certified to teach health and physical education at the elementary and junior high level; and was not currently employed. The court also found that Cindy's past emotional health problems had improved noticeably and "no evidence exists in the record she cannot obtain employment generally, or as a teacher of physical education, albeit in a different locale." The District Court also found that, prior to the distribution of the marital estate, Cindy lacked sufficient assets to provide for her reasonable needs and that, while she would be able to support herself through appropriate employment, she would need a brief period of maintenance "to assist her in a transition of employments." The court ordered continued temporary maintenance from November of 1998 until September 1, 1999, in the amount of $600 per month.

¶28.Cindy contends the court erred in awarding too little maintenance and for too short a period of time. We disagree.

¶29.We observe at the outset that the court did not make the express findings required for an award of maintenance under § 40-4-203, MCA. Indeed, a fair reading of the relevant findings is that, with the distribution of the marital estate, Cindy had sufficient property to provide for her reasonable needs and was capable of supporting herself through appropriate employment. Nevertheless, the court awarded "transition" maintenance.

¶30.Cindy argues that the maintenance awarded was too little in amount and too short in duration, relying first on In re Marriage of Williams (1986), 220 Mont. 232, 714 P.2d 548. There, the wife held a provisional teaching certificate but had not pursued a career after marriage, remaining at home to care for the parties' six children. *Marriage of Williams*, 220 Mont. at 235, 714 P.2d at 550. She presented testimony from an economic consultant regarding "career value losses of $162,597, which included $76,313 in lost retirement benefits and $86,284 in salary differential" based on her foregone career during the marriage. The trial court found that she required maintenance in the amount of $800 per month to complete her education and also awarded additional maintenance of $16,259.70 per year (10% of the total "career value losses") for ten years. *Marriage of Williams*, 220 Mont. at 236, 714 P.2d at 550. The award of maintenance based on the career value losses was in lieu of a marital property distribution. *Marriage of Williams*, 220 Mont at 239, 714 P.2d at 552. On appeal by the husband of these and other issues, we affirmed. *Marriage of Williams*, 220 Mont. at 234-35, 714 P.2d at 549-50.

¶31.Cindy's reliance on *Marriage of Williams* is misplaced because the core fact relating

to the major portion of the maintenance awarded in *Marriage of Williams* simply does not exist in the present case. Here, Cindy received substantial marital assets in addition to maintenance. Indeed, she received assets capable of capital appreciation or of generating income valued at $219,516. Thus, the "in lieu of marital property distribution" basis for the court's award of maintenance in the amount of more than $16,000 per year for ten years based on the "career value losses" in *Marriage of Williams* is absent here. Nor, of course, did Cindy "forego" her career. Therefore, we need not address *Marriage of Williams* further.

¶32.Cindy also argues, under In re Marriage of Manus (1987), 225 Mont. 457, 733 P.2d 1275, that maintenance is justified when a wife needs retraining to enter the job market, lacks sufficient property and is incapable of self-support. She is correct. These factors go to the issue of entitlement to maintenance, however, not to the amount of the maintenance awarded or the duration of the award.

¶33.Cindy was awarded maintenance. Moreover, as discussed above and unlike *Marriage of Manus*, the present case does not involve findings that Cindy lacks sufficient property, is incapable of self-support or needs retraining to enter the job market. Nor has Cindy challenged the actual findings made by the District Court regarding the sufficiency of her property and her employability under the clearly erroneous standard. *Marriage of Manus* simply does not advance Cindy's arguments here.

¶34.We conclude Cindy has not established that the District Court abused its discretion with regard to the amount or duration of the maintenance awarded.

¶35.Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART