No. 02-418

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 50N

In Re the Marriage of:

MARY ANN KRASKE,

        Petitioner and Appellant,

and

WILLIAM WADE KRASKE,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                     In and for the County of Yellowstone, Cause No. DR 99-0742,
                     The Honorable G. Todd Baugh and Gregory R. Todd, Judges presiding.

COUNSEL OF RECORD:

        For Appellant:

                Mary Ann Kraske (pro se), Billings, Montana

        For Respondent:

                Patrick C. Sweeney, Attorney at Law, Billings, Montana

                          Submitted on Briefs:  October 31, 2002

                                 Decided:  March 24, 2003

Filed:

            _____
                       Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Mary Ann Kraske filed a petition for dissolution of her marriage to William Wade Kraske in the District Court for the Thirteenth Judicial District in Yellowstone County. The District Court dissolved the marriage on August 2, 2001, and entered a final decree resolving custody, support, and property distribution issues on March 15, 2002. Mary Ann appeals the District Court's decrees. We affirm the judgment of the District Court.

¶3 Although numerous issues are raised on appeal, those we are able to decide based on the record before us are the following:

¶4 1. Did the District Court commit reversible error when it bifurcated the issues and dissolved the parties' marriage before deciding property distribution, custody and support?

¶5 2. Did the District Court abuse its discretion when it distributed the marital estate?

FACTUAL AND PROCEDURAL BACKGROUND

¶6 Mary Ann and William Ward Kraske married on July 3, 1979, in Wyoming. Subsequent to their marriage, the Kraskes acquired numerous rental properties with commingled premarital and marital assets. Since their marriage, they have had three

2

children, Justin Wade, born on July 1, 1981, Cody William, born on May 3, 1984, and Kari Ann, born on February 12, 1987. On June 18, 1999, Mary Ann petitioned for dissolution.

¶7 Throughout the dissolution proceedings, the District Court was aware that Mary Ann and William's marital discord was such that they could not co-manage their numerous rental properties or other marital property without potential or actual conflict. On July 9, 1999, the District Court granted Mary Ann's initial temporary restraining order excluding William from visiting the marital home. Later, on July 20, 2000, William moved for a temporary restraining order barring Mary Ann from properties that William was managing on the basis that Mary Ann had harassed and assaulted him. The District Court later denied that request after a hearing on July 27, 2000. Instead, the District Court orally directed the parties to reach an agreement with respect to which rental properties each spouse would maintain. Apparently, the parties managed the properties without further physical confrontation.

¶8 On July 19, 1999, the case was transferred to the Honorable G. Todd Baugh who set a trial date for January 7, 2000. On December 9, 1999, William moved for continuance of that date so that his attorney could properly prepare for the trial and complete the exchange of preliminary disclosure statements. Trial was reset for March 3, 2000. From March 1, 2000, to June 12, 2001, the trial date was rescheduled seven times at Mary Ann's request and two of her attorneys were given permission to withdraw from representation due to their inability to work with her. In June of 2001, trial was scheduled for August 1, 2001.

¶9 On July 18, 2001, Mary Ann filed a *pro se* Motion for Continuance and Motion to Compel Income and Expense Accounting, based on her contention that William failed to

3

disclose necessary information. William objected, and pointed out that all discovery was supposed to have been completed by September 1, 2000, and that any failure to disclose was due to Mary Ann's failure to provide preliminary and final disclosures required prior to trial. On August 1, 2001, after taking testimony from Mary Ann to the effect that there was serious irreconcilable marital discord, the District Court decided to bifurcate the trial by dissolving the marriage at that point and continued the remaining property and child custody issues. The District Court entered an order bifurcating the trial on August 2, 2001, and filed a decree of dissolution of the marriage on the same date. In its August 2, 2001, Order, the District Court cited the reasons for its decision to bifurcate the trial:

> The Court notes that this case began on June 18th, 1999 and that this is the tenth trial setting for this case with three prior court dates continued to enable the Petitioner to seek counsel. Petitioner has had two prior counsel which has [sic] sought leave to withdraw which has been granted. The Petitioner certainly needs the assistance of counsel to press her claims, at the same time, the Respondent has a right to see some end to this matter. While the parties seem divided upon issues of property division, child support and maintenance there seems no dispute whatever that the marriage is irretrievable [sic] broken.

William served a notice of entry of judgment on Mary Ann on August 2, 2001. The District Court reset the trial date on the remaining issues for November 9, 2001.

¶10 On November 9, 2001, Mary Ann moved to disqualify the District Court judge, and for a continuance to better prepare for trial. On November 27, 2002, Judge Baugh agreed to continue the case and recuse himself from further proceedings. On that date, the case was assigned to the Honorable Gregory Todd, who re-scheduled the trial for February 4, 2002. On February 4, 2002, William presented his evidence. After Mary Ann began the presentation of her evidence, the court recessed until the following day. On February 5,

4

2002, Mary Ann appeared via telephone, and the District Court continued the trial to February 19, 2002. On February 19, 2002, Mary Ann did not appear for the final day of the trial, but submitted a letter that was admitted into evidence. In it she stated that she declined to appear. William finished the presentation of his case. He filed his proposed findings of fact on February 25, 2002.

¶11 On March 15, 2002, the District Court entered a final judgment and notice of final judgment. On April 11, 2002, the District Court entered an order denying Mary Ann's motion for reconsideration. Mary Ann now appeals the District Court's two Decrees of Dissolution.

STANDARD OF REVIEW

¶12 We review the district court's conclusions of law to determine whether they are correct. *Stanley v. Holms* (1997), 281 Mont. 329, 333, 934 P.2d 196, 199. We review a district court's distribution of the marital estate first to determine whether the district court's findings of fact are clearly erroneous. *Siefke v. Siefke,* 2000 MT 281, ¶ 7, 302 Mont. 167, ¶ 7, 13 P.3d 937, ¶ 7. Where the district court's findings of fact are not clearly erroneous, we will not disturb the district court's distribution of marital property unless the district court abused its discretion. *In re Marriage of Smith* (1995), 270 Mont. 263, 267-68, 891 P.2d 522, 525. The standard for determining whether a district court abused its discretion is "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *In re Marriage of Rolfe* (1985), 216 Mont. 39, 45, 699 P.2d 79, 83 (citation omitted).

5

## DISCUSSION

### ISSUE 1

¶13   Did the District Court commit reversible error when it bifurcated the issues and dissolved the parties' marriage before deciding property distribution, custody and support?

¶14   After numerous continuances of the trial date, the District Court ordered that the trial be bifurcated and dissolved the parties' marriage while reserving issues of child custody and the distribution of the marital estate for a later date.

¶15   Mary Ann contends that the District Court erred when it entered its first decree on August 2, 2001, and that after doing so, it lacked further jurisdiction to issue its second decree of dissolution on March 15, 2002, when it distributed the marital estate and resolved child custody and support issues. She contends that bifurcation violated § 40-1-104, MCA, and denied her the right to a trial on the issues of child custody and distribution of the marital estate.

¶16   William contends that while bifurcation is not a preferred procedure, it is still permissible despite § 40-1-104, MCA, and was, in this case, necessary due to Mary Ann's repeated efforts to delay the proceedings. William further contends that, even if this Court concludes that the District Court erred when it bifurcated the trial, that error was harmless because Mary Ann had an opportunity to further adjudicate the remaining issues.

¶17   Section 40-4-104(1), MCA, provides that:

The district court shall enter a decree of dissolution of marriage if:

. . . .

6

(b) the court finds that the marriage is irretrievably broken . . .

(c) the court finds that the conciliation provisions of the Montana Conciliation Law and of 40-4-107 either do not apply or have been met; *and*

(d) *to the extent it has jurisdiction to do so, the court has considered approved, or made provision for parenting, the support of any child entitled to support, the maintenance of either spouse, and the disposition of property.* [Emphasis added.]

Section 40-4-108(1), MCA, further provides that "[a] decree of dissolution of marriage or of legal separation is final when entered, subject to the right of appeal."  In *In re Marriage of Skinner* (1989), 240 Mont. 299, 783 P.2d 1350, we concluded based on § 40-4-104, MCA, that it was error to bifurcate the issues in a dissolution.  We stated:

> In this case we note the District Court entered a decree of dissolution of the marriage on November 2, 1987, and it was not until February 6, 1989 that the District Court filed its final judgment relating to the disposition of the marital property. The requirement of § 40-4-104(1), MCA, was not met. The District Court should have entered judgment relating to the disposition of marital property before entering the decree of dissolution of the marriage.
>
> Although we will not find reversible error in this instance, we call to the attention of the bench and bar the necessity to comply with the above statute.

*Skinner*, 240 Mont. at 302, 783 P.2d at 1352.

¶18     Based on our decision in *Skinner*, we conclude that the District Court erred when it bifurcated the trial, and must consider whether the District Court's error was harmless.  In *Zeke's Distributing v. Brown-Forman* (1989), 239 Mont. 272, 278, 779 P.2d 908, 912, this Court held that "[f]or error to be the basis for a new trial, it must be so significant as to materially affect the substantial rights of the complaining party."  "A harmless error does not mandate that we reverse a district court judgment; an 'error must cause substantial prejudice' to warrant reversal."  *Tipp v. Skjelset*, 1998 MT 263, ¶ 16, 291 Mont. 288, ¶ 16, 967 P.2d

7

787, ¶ 16 (quoting *Erickson v. State ex rel. Bd. of Med.Exam.* (1997), 282 Mont. 367, 375, 938 P.2d 625, 630).

¶19    Mary Ann suggests that the District Court's error was not harmless and contends that the District Court lacked jurisdiction after it issued its original decree of dissolution.

¶20    In *In re Marriage of Bukacek* (1995), 274 Mont. 98, 907 P.2d 931, we considered whether a district court lacked subsequent jurisdiction over a dissolution proceeding after it orally granted a decree of dissolution and expressly reserved final resolution of custody and estate distribution issues, which it decided two years later.  The appellant in *Bukacek* contended that the District Court's dissolution of the marriage ended its jurisdiction in the matter.  However, we disagreed, and stated:

> The term "decree" includes the term "judgment."  Section 40-4-103(4), MCA. The Montana Rules of Civil Procedure define "judgment" as "the *final determination* of the rights of the parties in an action or proceeding . . . and includes a decree . . . ."  Rule 54(a), M.R.Civ.P. (emphasis added).  Although the District Court in this case purported to orally grant the parties' dissolution at the initial hearing, that statement was by no means a "final determination" of the couple's rights.  As the court stated at that time, the issues of child custody, support, and maintenance had yet to be decided.  Furthermore, the court later acknowledged that it had no jurisdiction to grant a dissolution without resolving those related issues.

*Bukacek*, 274 Mont. at 102-03, 907 P.2d at 933-34.  We concluded that the District Court's order granting the dissolution was not a final decree which divested the court of further jurisdiction.

¶21    For the same reason, we conclude that the District Court retained jurisdiction in these proceedings.  It was without authority to dissolve the marriage without deciding the remaining issues and made clear that it did not intend to do so.

8

¶22    Since the District Court did not have the authority to issue a final decree prior to resolution of all of the parties' respective rights, we conclude that the District Court continued to retain jurisdiction to try all of the issues in the custody proceedings.  The District Court did try all of the remaining issues, on February 4, and February 19, 2002.  Mary Ann has failed to demonstrate how the District Court's error affected any of her substantial rights.  Any prejudice she ultimately may have suffered was due to her own failure to appear at trial when it was scheduled.  Therefore, while we conclude that the District Court erred by bifurcating the proceedings, we conclude that the error was not grounds for reversal.

ISSUE 2

¶23    Did the District Court abuse its discretion when it distributed the marital estate?

¶24    Mary Ann contends that the District Court abused its discretion when it distributed the marital assets because it gave her all of the marital liabilities, and the less desirable properties.

¶25    We first note that, contrary to Mary Ann's suggestion, the record does not suggest that the District Court distributed property without a trial.  The only pre-trial disposition of the property relates to the District Court's distribution of the responsibility for maintaining and collecting rent from the rental properties, an arrangement that was clearly interlocutory and for the purpose of preventing conflict between the parties while preserving the assets in the marital estate.

¶26    With respect to the final distribution, we first conclude that the District Court's

findings with respect to the value of the assets in the marital estate was not clearly erroneous.

At trial, William provided testimony and documentary evidence of the property values.

Mary Ann failed to appear at trial to contest these valuations or present different valuations.

We have previously determined that:

> A district court has far reaching discretionary powers to determine the value of property in a dissolution action. Its valuation can be premised on expert testimony, lay testimony, documentary evidence, or any combination thereof. As long as the valuation is reasonable in light of the evidence submitted, we will not disturb that finding on appeal.

*In re Marriage of Milesnick* (1988), 235 Mont. 88, 94-95, 765 P.2d 751, 755 (citations omitted). Under these circumstances, we conclude that the District Court's final values for the assets and liabilities in the marital estate were reasonable in light of the evidence submitted, and were not clearly erroneous.

¶27 The District Court then distributed the marital estate as follows:

|  | Mary Ann | William |
|---|---|---|
| Total Personal Property | $ 15,500 | $ 78,000 |
| Total Real Property | 358,166 | 451,098 |
| Total Liabilities & Premarital/Inherited Value | (88,000) | (274,058) |
| Net Estate | $ 285,666 | $ 255,040 |

This Court has previously recognized that § 40-4-202, MCA, vests the District Court with "broad discretion to distribute the marital estate in a manner which is equitable to each party according to the circumstances of the case," *Smith*, 270 Mont. at 268, 891 P.2d at 525, and provides:

> In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount

10

and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income . . . .

Section 40-4-202, MCA. Although William received a greater proportion of the assets of the marital estate, the District Court found that William retained substantially more premarital property than Mary Ann and adjusted the final distribution to reflect the parties' premarital property. Excluding the parties' premarital property, Mary Ann received a greater proportion of the remaining marital assets, and both parties received income-generating rental properties. We conclude that the District Court did not abuse its discretion when it distributed the marital property.

¶28    For the foregoing reasons, the judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

11