No. 96-213

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


IN RE MARRIAGE OF

MAUREEN E. ORTIZ,

Petitioner and Respondent,

and

JOSEPH J. ORTIZ,

Respondent and Appellant.



APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Carbon,
The Honorable Diane G. Barz, Judge presiding.



COUNSEL OF RECORD:

For Appellant:

Richard J. Carstensen, Attorney at Law,
Billings, Montana

For Respondent:

Karl Knuchel, Attorney at Law,
Livingston, Montana



Submitted on Briefs: March 13, 1997

Decided:   May 27, 1997
Filed:


_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

     Maureen E. Ortiz filed a petition for dissolution of her marriage to Joseph J. Ortiz in the District Court for the Thirteenth Judicial District in Carbon County.  Following a hearing, the District Court dissolved the parties' marriage and distributed their marital property.  Joseph appeals from the District Court's valuation and distribution of the marital estate and its determination that he is liable for certain medical bills.  We affirm

the order of the District Court.

We address three issues on appeal:

1.   Did the District Court err when it valued the parties' ranch at $400,000 based on the testimony of an agricultural real estate broker?

2.   Did the District Court err when it ordered that the parties' ranch be sold and that the proceeds be divided equally between the parties?

3.   Did the District Court err when it determined that Joseph was liable for his medical debts which had been incurred prior to the parties' separation?

## FACTUAL BACKGROUND

Maureen and Joseph Ortiz were married on February 10, 1962.  In 1971, the parties purchased a 709 acre ranch located between Red Lodge and Billings for $72,000. The parties resided at the ranch until their separation on May 26, 1994.  During the parties' marriage, they attempted to raise cattle on the ranch, but found that the operation was not economically viable.  Joseph therefore continued his employment as a full-time cement contractor.  Since 1992, however, Joseph has been unable to work due to physical disability.

On June 1, 1994, Maureen filed a petition for dissolution of marriage in the Thirteenth Judicial District Court.  In her petition, Maureen requested that the parties' ranch be sold and the proceeds be divided equally between Joseph and her.  Joseph, however, requested that the ranch be left intact, and that he be allowed to pay Maureen for her one-half interest in the property over a five-year period.

At the dissolution hearing on July 10, 1995, both parties disputed the value of the 709 acre ranch.   Linda Bender, a real estate broker with nine years' experience marketing farm, ranch, commercial, and residential property in the area, testified for Maureen that the Ortizes' 709 acre ranch was worth $400,000.  To arrive at that figure, Bender performed a detailed comparative market analysis, in which she compared the Ortizes' ranch with four properties that had sold within six months of the hearing, as well as with nine ranches that she had sold in the previous year.  Based on her comparative market analysis, Bender testified that the parties' 709 acres were worth an average of $400 per acre.  To this value, Bender added the $49,953 appraised value of the Ortiz home, and the $23,310 cost of replacement for the surrounding outbuildings, for a total valuation of $398,000 to $400,000.

Bender supported her per-acre valuation by comparing the parties' property to pending land sales on surrounding ranch properties, which ranged from $520 per acre to $1100 per acre.  She testified that a farm appraisal would not be useful in determining the market value of the Ortiz property because a prospective purchaser would probably not buy the property for use as a ranch or farm.  Instead, Bender testified that the highest value of the land was for  a scenic retreat due to its proximity to Billings and Red Lodge.

In contrast, Joseph's expert, Vernon Schoulte, valued the Ortiz ranch based on its utility as a working ranch.  Using the "cost approach" method of valuation, which is based upon the economic utility of the property, Schoulte valued the parties' ranch at $182,500.  During the hearing, however, Schoulte acknowledged that during the time the of the Ortizes' marriage, the ranch was "not a viable economic farm."

On October 30, 1995, the District Court entered its findings of fact, conclusions of law, and decree.  In its findings of fact, the court determined that the parties' ranch "has a fair market value of $375,000.00 to $425,000.00."  In its final property division, the court valued the ranch at $400,000 and ordered that the property be sold with the proceeds divided equally between Maureen and Joseph.  In addition, the court ordered Joseph to assume liability in the amount of $15,100 for medical bills which he had incurred prior to the parties' separation.

## ISSUE 1

Did the District Court err when it valued the parties'  ranch at $400,000 based on the testimony of an agricultural real estate broker?

This Court reviews a district court's factual findings related to the division of marital property to determine whether those findings are clearly erroneous.  In re Marriage of Danelson (1992), 253 Mont. 310, 317, 833 P.2d 215, 219.  If the court's findings are not clearly erroneous, this Court will affirm the court's distribution unless the court abused its discretion.  In re Marriage of Smith (1995), 270 Mont. 263, 267-68,

891 P.2d 522, 525.

On appeal, Joseph contends that the District Court's findings of fact regarding the valuation of the parties' ranch are clearly erroneous. Specifically, Joseph asserts that the District Court erred when it accepted the testimony of Maureen's real estate broker, who had no experience as a property appraiser, over the testimony of his expert, who had been a certified and licensed appraiser for fifteen years. Based on his contention that Maureen's expert did not have adequate qualifications to value the Ortiz ranch, Joseph asserts that the District Court's valuation of the ranch, based on that testimony, was unsupported by substantial evidence.

In this case, Linda Bender testified for Maureen regarding the present market value of the Ortizes' 709 acre ranch. Bender's credentials, as presented at the hearing, included five years' experience as a real estate broker and nine years' experience as a real estate sales person and real estate associate. Bender testified that her position as a real estate associate consisted of the marketing of farm, ranch, commercial, and residential property. In addition to her experience selling property, Bender had completed 120 credit hours of training and an additional 15 hours every two years of supplemental training.

Bender based her valuation of the Ortiz property upon both her inspection of the property and upon a detailed comparative market analysis. She testified that she was familiar with the sales of comparable property in Carbon and Stillwater Counties within the past two years, and based her comparative analysis on four similar properties that had sold within six months of the date of the hearing, as well as on nine properties that she had sold in the previous year. In addition, Bender testified that on the day before the hearing she had found one pending sale and several listings "right in the neighborhood" that supported her comparative market analysis. Based on her experience as a real estate broker in the area, Bender testified that she could sell the Ortiz ranch for between $360,000 and $430,000.

In contrast, Joseph's expert, Vernon Schoulte, testified that he had appraised the Ortiz ranch at $182,500 based on its "highest and best use" as a farm or ranch. Schoulte had experience as both an appraiser and a real estate broker; however, his testimony regarding the value of the Ortizes' ranch was based solely on his appraisal of the property. He did not express an opinion regarding the amount the Ortizes could expect to receive from a sale of their property. Furthermore, although Schoulte testified that the property's best use, pursuant to the cost approach method of valuation, was as a working farm or ranch, he admitted at the dissolution hearing that the property was "not a viable economic farm" during the time of the Ortizes' management.

Whether an adequate foundation has been established for the admission of expert opinion testimony is an issue largely within the discretion of the district court. Jim's Excavating Serv. v. H.K.M. Assoc. (1994), 265 Mont. 494, 509-10, 878 P.2d 248, 257.

In this case, we hold that the District Court did not abuse its discretion when it relied on the opinion testimony of Linda Bender, and that its findings based on that testimony are not clearly erroneous. We therefore affirm that portion of the District Court's order which valued the parties' ranch at $400,000.

                         ISSUE 2
Did the District Court err when it ordered that the parties' ranch be sold and that the proceeds be divided equally between the parties?

Joseph contends that the District Court erred when it ordered the sale of the Ortiz ranch. Joseph wants to continue to live on and ranch the parties' real property, and contends that by doing so he is capable of paying Maureen her one-half interest in the ranch over a five-year period. In support of his contention that the District Court erred when it determined that the Ortiz ranch should be sold, Joseph cites this Court's policy "that a family farm or ranch should be kept intact and operated as a unit upon a marriage dissolution whenever there is a reasonable means of providing a wife her equitable share of the marital property short of selling the land." In re Marriage of Bell (1986), 220 Mont. 123, 127, 713 P.2d 552, 555 (quoting In re Marriage of Gomke (1981), 192 Mont. 169, 172, 627 P.2d 395, 396).

This Court has held that a district court may consider Montana's policy in favor of keeping a family farm intact when it distributes the marital property. In re Marriage of Binsfield (1995), 269 Mont. 336, 345, 888 P.2d 889, 894. "No authority is cited, however, and we have located none, in support of the proposition that a family farm must

be retained intact." Binsfield, 269 Mont. at 345, 888 P.2d at 894 (emphasis added). In fact, it is well established that "[t]he policy of keeping a family ranch intact cannot be used to deprive a spouse of his or her equitable share of the marital estate." In re Marriage of Tonne (1987), 226 Mont. 1, 5, 733 P.2d 1280, 1283. See also In re Marriage of Garst (1983), 206 Mont. 89, 96, 669 P.2d 1063, 1067.

In this case, Maureen contends that the parties' ranch must be sold so that she can receive her equitable one-half share of the marital estate. Specifically, Maureen maintains that Joseph cannot generate sufficient income from the ranching operation and his outside employment to pay her annual installments for her $200,000 interest in the property.

Joseph's tax returns, introduced at the district court hearing, disclose that Joseph earned an annual average income of $15,250 from 1991 through 1994. Although Joseph testified that he would be able to earn more money after an ankle operation, he introduced no evidence that he would be able to generate sufficient income to pay Maureen for her share of the marital estate. In fact, at the dissolution hearing, Joseph admitted that he would be unable to pay Maureen for her $200,000 share of the ranch and pay his own expenses as well. In addition, he admitted that he would be unable to borrow a sufficient sum to pay Maureen for her share of the estate.

In light of the substantial credible evidence introduced at the dissolution hearing that Joseph was without the financial resources to pay Maureen her equitable one-half interest in the parties' ranch, we hold that the District Court did not abuse its discretion when it ordered that the ranch be sold and divided equally between the parties. We affirm that portion of the District Court's decree.

ISSUE 3

Did the District Court err when it determined that Joseph was liable for his medical debts which had been incurred prior to the parties' separation?

In this case, the District Court divided the parties' marital liabilities so that Maureen assumed the entire $7,856 obligation remaining for the purchase of her automobile and Joseph assumed the entire $15,100 obligation remaining for his medical bills. Joseph contends, however, that the court erred by assigning him the entire $15,100 debt for his pre-separation medical bills. Joseph maintains that the District Court was bound by Maureen's testimony at the dissolution hearing that it would be "fair" for her to assume one-half of those debts. In support of his contention, Joseph cites In re Marriage of Beck (1983), 203 Mont. 455, 661 P.2d 1282. The facts in Beck, however, are distinguishable from those in this case.

In Beck, the parties agreed upon and submitted a proposed finding to the district court which established liabilities in the amount of $33,668. The District Court then found that the parties' liabilities totaled $47,616. In light of the fact that both parties had agreed upon the smaller sum, and the additional fact that the district court altered that sum without explanation, this Court directed the district court to modify its finding to reflect the sum agreed upon by the parties. We stated: "The trial court should not have disregarded a fact to which both parties agree without giving its reasons." Beck, 203 Mont. at 461, 661 P.2d at 1286.

In this case, however, it is far from clear that the parties agreed that Maureen should be liable for one-half of Joseph's medical bills. At the dissolution hearing, Maureen was asked:

Q. And do you think it fair that each of you should pay half of [the family bills]?

A. I think, if I am liable to pay half of these bills, then I am liable to pay half of these bills.

Q. I just asked if you thought it was fair?

A. Yes.

Maureen's testimony did not reflect an agreement by both parties that Maureen would pay one-half of Joseph's medical bills. Furthermore, the District Court was aware, from documents submitted to that court, that Maureen did not believe herself liable for those

bills.  For example, in her petition for dissolution of marriage, Maureen proposed that "[Joseph] should be solely liable for his medical bills and any other debts of the marriage."  It was clearly within the District Court's discretion, given the lack of any formal agreement regarding liability for Joseph's medical bills, to determine how to divide the parties' marital liabilities.  We hold that the court did not err when it decided that Maureen should assume liability for her car and Joseph should assume liability for his medical bills.  We therefore affirm that portion of the District Court's order.

Based upon our conclusions that the District Court did not err when it valued the parties' ranch at $400,000 and ordered that the ranch be sold, and based upon our conclusion that the District Court did not err when it divided the parties' marital liabilities, we affirm the judgment and decree of the District Court.

/S/  TERRY N. TRIEWEILER

We Concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  WILLIAM E. HUNT, SR.
/S/  W. WILLIAM LEAPHART