No. 97-073

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 223N

IN RE THE MARRIAGE OF

JO ANN SPOLAR,

Petitioner and Respondent,

and

EUGENE E. SPOLAR,

Respondent and Appellant.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Milton Datsopoulos; Datsopoulos, MacDonald & Lind,

Missoula, Montana

For Respondent:

Bernard J. "Ben" Everett; Knight, Dahood, McLean & Everett,

Anaconda, Montana

Submitted on Briefs: August 6, 1998

Decided: September 3, 1998

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2 Eugene E. Spolar (Eugene) appeals from the judgment entered by the Second Judicial District Court, Silver Bow County, on its Findings of Fact, Conclusions of Law and Order distributing the marital estate of himself and his former spouse Jo Ann Spolar (Jo Ann). We affirm.**

ISSUES

**¶3 1. Did the District Court err in distributing the marital estate?**

**¶4 2. Did the District Court err in proceeding with a trial on the merits when Eugene was unable to attend due to his incarceration?**

## BACKGROUND

**¶5 Eugene and Jo Ann were married in 1957 in Butte, Montana. The District Court dissolved the marriage in 1987. The parties agreed not to divide the marital estate at that time and the court reserved all issues regarding their real and personal property. On May 16, 1995, Jo Ann moved for distribution of the marital estate.**

**¶6 Eugene and Jo Ann had no assets of any value at the time of their marriage, but had accumulated a substantial estate during the 30-year marriage. In 1996, the net value of the marital estate was $1,166,023, including joint liabilities of $92,808. The assets were accumulated through the joint efforts of both parties, primarily through the management and operation of a series of business enterprises, including a modular home manufacturing facility known as Summit Valley Industries.**

**¶7 At all times relevant to these proceedings, Jo Ann has continued to manage the business affairs of Summit Valley Industries. From the time the parties separated in 1987 until 1993, Eugene ran a small ranching operation. In 1993, however, Eugene was convicted of trafficking in illegal drugs and sentenced to a 48-month term in a federal prison in Safford, Arizona. He was serving that sentence when the present case came to trial.**

**¶8 In addition to his incarceration, Eugene's criminal activities also resulted in the forfeiture of a certain tract of real estate located on Alder Creek, near the Wise River in Beaverhead County, Montana (hereinafter, the Alder Creek property). This tract had been part of the marital estate prior to its forfeiture. The market value of the property was $90,000.**

**¶9 At the time of these proceedings, Jo Ann was 53 years old, employed in the management and bookkeeping of Summit Valley Industries, and in generally good health. She did not complete high school. Jo Ann contributed to Social Security on her own behalf beginning in 1994.**

**¶10 Eugene was 57 years old at the time of trial and unemployed due to his incarceration. His opportunities for acquiring income in the future are limited by an**

**arthritic condition which prevents him from pursuing his vocation in carpentry, and he is not trained in any other profession. Eugene contributed to Social Security until his arrest in 1993.**

## DISCUSSION

**¶11 1.  Did the District Court err in distributing the marital estate?**

**¶12 We review a district court's findings related to the division of marital property to determine if they are clearly erroneous. In re Marriage of Baer, 1998 MT 29, ¶ 29, 954 P.2d 1125, ¶ 29, 55 St.Rep. 104, ¶ 29; In re Marriage of Ortiz (1997), 282 Mont. 500, 503, 938 P.2d 1308, 1310. If the findings are not clearly erroneous, we will not disturb the court's distribution of property absent an abuse of discretion. *Marriage of Baer*, ¶ 29; *Marriage of Ortiz*, 282 Mont. at 503, 938 P.2d at 1310.**

**¶13 Eugene contests the distribution of the marital estate on the grounds that the District Court failed to divide the estate equally despite the fact that neither party entered the marriage with any assets of particular value and all of the marital assets were procured through the joint effort of both parties over the course of a 30-year marriage. Eugene contends that since he and Jo Ann contributed equally to the accumulation of the property, the estate should be distributed equally between them. We disagree.**

**¶14 The guidelines for the equitable apportionment of a marital estate, set forth in § 40-4-202, MCA, require a district court to**

> consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit. In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; property acquired in exchange for

property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage; and property acquired by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements.

**The statute vests the court with broad discretion to apportion the marital estate in a manner which is equitable to each party under the circumstances. In re Marriage of Maedje (1994), 263 Mont. 262, 265, 868 P.2d 580, 582-83. Moreover, an equitable distribution does not require a 50/50 apportionment of the marital assets. In re Marriage of McNellis (1994), 267 Mont. 492, 501, 885 P.2d 412, 418. Equity, not equality, guides a court's discretion in dividing a marital estate. In re Marriage of Garner (1989), 239 Mont. 485, 488, 781 P.2d 1125, 1127.**

**¶15 The record reflects that, in distributing Eugene and Jo Ann's marital estate, the District Court initially divided the gross estate evenly between them. It adjusted that division, however, to reflect the fact that the marital debts in the amount of $92,808 were being assumed by Jo Ann in her personal capacity and that marital assets worth $90,000 had been eliminated from the marital estate via forfeiture due to Eugene's criminal activities. Substantial credible evidence supports these findings, and we conclude that the District Court did not abuse its discretion in adjusting its initial distribution to reflect these circumstances.**

**¶16 Eugene also argues that the District Court erred in concluding as a matter of law that Jo Ann possessed a reduced expectation of Social Security benefits upon retirement, because federal law provides benefits to a divorced spouse at a level commensurate with the contribution record of the ex-spouse if the divorced spouse would otherwise not be eligible to receive benefits in her own right. We need not address the merits of this argument, as our review of the record indicates that no**

adjustments were made to the distribution of the marital assets based on the District Court's conclusion of law on this matter. The only deductions or additions made to the respective shares of the parties were based on the marital debt assumed by Jo Ann and the market value of the Alder Creek property forfeited to the federal government. Because the District Court's conclusion on this issue had no bearing on its distribution, any error was harmless and does not constitute grounds for reversal on appeal. *See* Ducham v. Tuma (1994), 265 Mont. 436, 440, 877 P.2d 1002, 1005.

¶17 Eugene also argues that the District Court abused its discretion in awarding Jo Ann a greater portion of the marital estate based on the loss of the Alder Creek property from the marital estate, because § 40-4-202(1), MCA, requires the District Court to distribute the assets of the estate "without regard to marital misconduct." In addition, he contends that, even if the court properly considered his role in the forfeiture of this property, it erred in not considering Jo Ann's misconduct as well.

¶18 These arguments are not persuasive. Although § 40-4-202(1), MCA, prohibits consideration of marital misconduct in equitably apportioning marital property, it expressly requires the court to consider the "dissipation of value" of marital assets. Ample evidence supports the District Court's findings that Jo Ann played no active role in Eugene's illegal activities and that the forfeiture of the Alder Creek property was Eugene's sole responsibility. Because the elimination of this asset from the marital estate was a direct result of Eugene's criminal activities, we conclude that the District Court did not abuse its discretion in allocating the full amount of this loss to Eugene.

¶19 2.  Did the District Court err in proceeding with a trial on the merits when Eugene was unable to attend due to his incarceration?

¶20 The original trial date for these proceedings was July 25, 1995. On that day, Eugene moved to continue the trial. He stated that, due to his cooperation in providing information on other drug traffickers, he had been placed in protective custody inside the federal penitentiary in Arizona and was not available to effectively assist his counsel in preparing for trial. The District Court granted Eugene's motion over Jo Ann's objection and rescheduled the trial for October 16, 1995. Eugene did not request a continuance of the rescheduled trial.

¶21 The record reflects that Eugene was deposed from prison during the week prior

to trial and that his deposition testimony was admitted into evidence at the trial. Rule 32(a)(3)(C), M.R.Civ.P., expressly provides for the admission of deposition testimony into evidence when a witness, including a party, is unable to testify in person due to imprisonment. Thus, Eugene's absence from the trial was largely accommodated by the introduction of his deposition testimony.

¶22 Eugene's specific contention is that his incarceration rendered him unable to effectively assist his counsel and forced him to stipulate to property values that might otherwise have been contested. For these reasons, according to Eugene, the District Court should have postponed the trial until a time when he was available to participate more effectively.

¶23 We decline to address this argument, however, because there is no indication in the record that Eugene requested a continuation of the October 16, 1995 trial date. We will not put a district court in error for a procedure in which the party asserting error acquiesced and participated, or to which the party made no objection. In re Marriage of Smith (1990), 242 Mont. 495, 501, 791 P.2d 1373, 1377. Nor does Eugene cite to any authority for his apparent theory that the District Court's failure to continue the rescheduled trial date *sua sponte* constitutes reversible error. We conclude that the District Court did not err in proceeding when Eugene was unable to attend.

¶24 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART